# CASES DETERMINED

## August Term, 1890.

Scott, Executor, Appellant, vs. Neeves and another, imp.,
Respondents.

*April 14 — September 23, 1890.*

WILLS. *(1) Construction: "Indebtedness."* *(2) Parol evidence to explain.*
*(3) Payment of attorneys' fees out of estate.*

1. A will provided that "whereas my brother G. . . . is now in-
debted individually to the estate of my husband, S., deceased, I
direct that such individual indebtedness be paid for him out of my
estate (so that he may be wholly released from the same) so far as
any such indebtedness remains outstanding at my decease." G.,
while doing business for his brother W., had borrowed money from
the husband of the testatrix, giving notes therefor signed in the
name of W. by G. as agent, and a portion of said notes remained
unpaid. The testatrix had been accustomed to speak of the indebt-
edness upon said notes as the indebtedness of G., and it was that
indebtedness to which she referred in her will. *Held* that, although
G. was not legally liable to pay such indebtedness, it was the inten-
tion of the testatrix that it should be paid out of her estate. TAY-
LOR, J., dissents.
2. Parol evidence that the testatrix always regarded and spoke of such
indebtedness as the indebtedness of G., was admissible to show that
it was the indebtedness referred to in the will.
3. In the action by the executor for a construction of the will in such
case, the circuit court properly directed that the taxable costs and
disbursements of all parties be paid out of the estate, and that the
county court make such allowance to the respective parties out of
the estate for counsel fees as might be just.

VOL. 77 — 20

APPEAL from the Circuit Court for *Columbia* County.

Action by the executor of the last will and testament of Ann E. Scott, deceased, to obtain a construction of certain provisions therein. The action was commenced in the circuit court for Lincoln county, but upon the application of the defendants *William B. Neeves* and *George A. Neeves*, on the ground of prejudice of the judge, the place of trial was changed to Columbia county. The facts will sufficiently appear from the opinion of the court by the Chief Justice and the dissenting opinion of Mr. Justice Taylor. The executor appeals from so much of the judgment of the circuit court as construes the latter clause of the third paragraph of the will, and so much thereof as provides that the county court of Lincoln county make an allowance to the respective parties out of the estate for counsel fees.

For the appellant there was a brief by *Curtis & Curtis*, attorneys, and *George R. Gardner*, of counsel, and oral argument by *H. H. Curtis* and *Mr. Gardner*.

For the respondents there was a brief by *Stark & Sutherland*, and oral argument by *Joshua Stark*.

The following opinions were filed April 29, 1890:

Cole, C. J. There does not appear to be any dissatisfaction with the construction which the learned circuit court placed upon the 12th, 14th, 15th, and 19th paragraphs of the will of Mrs. Scott. The executor accepts that construction as correct, and as a full and complete interpretation of the meaning of those paragraphs, and has taken no appeal from those portions of the judgment. So we are relieved from all consideration of these paragraphs of the will, and they may be passed without further comment.

The controversy in this court is mainly over the meaning of the third paragraph, which reads as follows: " Whereas my brother *George A. Neeves* is indebted to me in the sum of ten thousand dollars, money loaned, it is my will that

the said indebtedness be canceled and my brother released from all demands and obligations in consequence of the same; and whereas he is now also indebted individually to the estate of my husband, Thomas B. Scott, deceased, I direct that such individual indebtedness be paid for him out of my estate (so that he may be wholly released from the same) so far as any such indebtedness remains outstanding at my decease."

The question now is, What should be understood by the language used in the last clause of this paragraph? In the answer of the defendants *W. B.* and *George A. Neeves,* they insist that the intention of the testatrix was to provide for the payment of certain sums of money loaned to said *George A.* by Mr. Thomas B. Scott in his life-time, and for which the said Scott received notes made and signed by said *George A.* in the name of the defendant *William B.,* his brother, as agent of said *William,* and that this was the indebtedness which the testatrix had in mind and desired should be paid out of her estate to the estate of her husband. The facts in regard to the origin and history of this indebtedness, as found by the circuit court, are as follows:

"For three or four years prior to December 11, 1883, and on that date, the defendant *George A. Neeves* was insolvent, and was doing business for his brother, *William B. Neeves,* as his agent, which facts were known to Thomas B. Scott and to the testatrix, Ann E. Scott. On the 11th day of December, 1883, Thomas B. Scott, the husband of the testatrix, Ann E. Scott, loaned to her brother, the said *George A. Neeves,* at her solicitation and request, the sum of $4,000, and received of him as security for such loan four certain promissory notes for $1,000 each, bearing date December 11, 1883, and made and signed by said *George A. Neeves* in the name of the defendant *William B. Neeves* by the said *George A. Neeves* as agent. There was no understanding or agreement between the parties to said loan,

when said notes were given to secure the same; that they were given, or were to be received, in payment for the money loaned. That said Thomas B. Scott afterwards spoke of and referred to said loan as a loan to said George A. Neeves, and always understood, prior to and at the time of his death, that the said George A. Neeves was to look after and pay said notes still outstanding, and relied upon him so to do. The money so loaned was used by said George A. Neeves in the business of the Grand Rapids Flouring Mill Company, a corporation of whose business he was manager. Two of said promissory notes given to secure the loan of $4,000 were paid by said flouring mill company to said Thomas B. Scott prior to his death, and the remaining two notes were still outstanding and unpaid in the hands of the executors of said Thomas B. Scott, to the knowledge of said Ann E. Scott, when her will was made; said unpaid notes being payable, respectively, eight and nine months after their date, with interest at eight per cent. per annum; and said notes are still outstanding and unpaid, and are in the possession of *Walter A. Scott* as trustee of the estate of Thomas B. Scott, deceased. The testatrix, Ann E. Scott, while she lived and at the time she made her will, understood the said indebtedness to Thomas B. Scott for said loan, to secure which said promissory notes were so given in the name of *William B. Neeves*, to be the indebtedness of her brother *George A. Neeves* to her husband, Thomas B. Scott, in his life-time, and to his estate after his death; and she often and uniformly spoke of said indebtedness as the indebtedness of said *George A. Neeves*, and expressed in her life-time, after the death of her husband, the said Thomas B. Scott, a desire that the payment of said indebtedness should not be enforced by the executors of her said husband's will. The said *George A. Neeves* was not, at the date of the decease of said testatrix, Ann E. Scott, and had not been for many years prior to that date,

indebted to said Thomas B. Scott or his estate in any manner or for any amount, either individually or otherwise, except for the balance of said $4,000 loaned and secured by said notes made in the name of *William B. Neeves;* and the said testatrix, at the same time she made her will, so understood, and had no knowledge of any other outstanding indebtedness of said *George A. Neeves* to the estate of her said husband, and had no other indebtedness in mind. The testatrix, Ann E. Scott, meant and intended by the individual indebtedness of her brother *George A. Neeves* to the estate of her husband, Thomas B. Scott, referred to in the third paragraph of her last will and testament, the indebtedness to the estate of her said husband for the balance unpaid on said loan of $4,000, to secure which said promissory notes had been so given by said *George A. Neeves* in the name of *William B. Neeves,* which indebtedness she understood to be, and was accustomed always to describe and speak of as, the individual indebtedness of said *George A. Neeves,* and she intended to and did, in and by said paragraph, direct that such indebtedness secured by said notes, so far as the same might remain outstanding at her decease, should be paid out of her estate."

That there is much evidence in this case which sustains these findings, it seems to me, cannot well be denied. Even if they are not supported by the weight of testimony, there is no such clear preponderance of proof against them as will warrant this court in setting them aside. The argument of plaintiff's counsel, in his contention of the proper meaning of the third paragraph, proceeds largely on the assumption that the testatrix must have had in mind a legal indebtedness of *George A. Neeves* to the estate of Thomas B. Scott,— one which could be enforced by the estate in an action; and, unless such indebtedness in fact existed when the testatrix died, there is nothing to which the language applies. But this is not the correct view in which to con-

sider the matter. If possible, we must ascertain the inten-
tion of the testatrix, and carry that intention into effect.
Extrinsic exidence of the facts and circumstances which
will explain the language and show in what sense it was
used by the testatrix, is admissible, though, of course, not
to change the plain meaning of the words. The words
"debt" and "indebtedness" are not always used in the
same sense; that is, they do not always import a legal ob-
ligation on the part of one to pay another something due
him. They often imply a mere moral or equitable obliga-
tion, as well as a strictly legal one. In what sense were
the words "individual indebtedness" used in this para-
graph? Must we assume that the testatrix referred to a
strictly legal debt which *George A. Neeves* owed the estate
of her husband, and to no other? Or had she in mind an
indebtedness which she supposed *George A. Neeves* was
legally or morally bound to answer for to the estate of
Thomas B. Scott? In the interpretation of the language,
it will not do to stop with the inquiry, Did *George A.*, in
fact and in law, owe a debt to the estate of Thomas B. Scott
which could be enforced by action in favor of the estate
when the testatrix died? It is an established fact that
*George A. Neeves*, as agent, gave the notes of his brother
*William B. Neeves* for the loan when it was made. But
whether *George A.* borrowed the money for himself or for
his brother or to be used in the flouring mill business, is a
question we do not deem it necessary to determine. Cer-
tain it is that loan was obtained by him. It is equally
certain that Mrs. Scott knew about this loan made by her
husband to *George;* and there is good ground for the infer-
ence that the loan was made at her request, and that, when
she executed her will, she knew that a part of the loan was
unpaid. The evidence is clear and satisfactory that she re-
garded and spoke of this debt as the indebtedness of her
brother *George A.* It is not probable that she had any ac-

curate knowledge as to whether he was technically liable at law for the loan, but that she spoke of this debt as the debt of *George* is indisputable.   To sustain this statement, it is only necessary to refer to her letter written to *George*, dated March 8, 1887, in which she tells him that a note against him for $3,500 had been found among her husband's papers, and asking him " *if he was owing the estate anything besides that $2,000 and interest.*"   The $2,000 was the unpaid balance of the $4,000 loan; and the $3,500 note referred to was the Bull note mentioned in the case, which was no longer an existing indebtedness against any one. There is much testimony besides this item which shows that, in conversations, Mrs. Scott referred to this indebtedness for the balance of the loan to her brother *George* as his indebtedness; and there can be no doubt, upon the evidence, that this was the indebtedness which she had in mind when she made her will.   It is suggested that she referred to the Bull note, but this supposition is completely overthrown by the testimony.   She must have had in mind this indebtedness of *George* to her husband's estate for this loan, which she supposed he was liable for or morally bound to make good; and the learned circuit judge was fully warranted in finding, upon the evidence, that she was accustomed to speak of that indebtedness, and always described it, as the indebtedness of *George* to the estate of her husband.   We shall not attempt to refer to the testimony which sustains that view, for it is unnecessary.

But the question remains, Was it competent to show by extrinsic evidence that the testatrix always regarded and spoke of this indebtedness for the balance of the loan as the indebtedness of her brother *George A.* to her husband's estate, so as to identify the subject matter to which she referred in her will when she directed that such individual indebtedness be paid for him out of her estate?   We have already indicated our view that she did not necessarily nor

probably refer to a technical legal liability of *George* to the estate of her husband, but that an equitable or moral obligation on his part to answer for that debt would come within the meaning of the language. But was parol evidence admissible to show that the testatrix used the language in that sense? It seems to us that evidence of the facts and circumstances which tend to disclose the intention of the testatrix, and enable us to understand the meaning and application of her words, was admissible. We think the rule laid down by Prof. Greenleaf sanctions the admission of such evidence to apply the intention of the testatrix and explain what was the indebtedness to which she referred. 1 Greenl. Ev. §§ 277, 289. The effect of the evidence was not to add words to the will, nor contradict the words used therein, but to explain what was really intended by words of doubtful meaning. It comes within the rule laid down by Mr. Justice Lyon in *Morgan v. Burrows*, 45 Wis. 217, where evidence is held admissible in aid of the interpretation of words of uncertain or doubtful meaning. See, also, *Miller v. Travers*, 8 Bing. 244; *Cloak v. Hammond*, L. R. 34 Ch. Div. 255; *In re Bushell*, L. R. 13 Prob. Div. 7; *Atkinson's Lessee v. Cummins*, 9 How. 479. Judge Redfield states the rule in substantially these words: "The admission of parol evidence in regard to wills is essentially the same as that which prevails in regard to contracts generally. It can be received to show the intention of the testator, and especially to enable the court, where the question arises, to give his language such an interpretation as it is reasonable to presume, from the circumstances in which he was placed, he intended it should receive, or to put the court in the place of the testator." 1 Redf. Wills, 496. Hence we think there was no error in admitting parol evidence of extrinsic circumstances to show in what sense the testatrix used the word "indebtedness" in the third paragraph of the will. It is apparent that she did not neces-

sarily use it in the strict sense of a legal liability on the part of *George A. Neeves* to the estate of Thomas B. Scott, but might, and probably did, attach a different meaning to it. Of course the intention of the testatrix must have effect given to it.

The other error assigned is the direction in the decision and judgment of the court below as to the payment of costs and disbursements. The court directed that the taxable costs and disbursements of all parties who had appeared in that court should be paid out of the estate of Ann E. Scott, deceased, and that the county court of Lincoln county should make such allowance to the respective parties out of the estate for counsel fees as, in the exercise of sound discretion, might be just. This order conforms to the direction of this court in *Scott v. West,* 63 Wis. 588; *Webster v. Morris,* 66 Wis. 400; *Ford v. Ford,* 70 Wis. 68 — which decisions upon this point we have no desire to disturb.

It follows from these views that the part of the judgment of the circuit court appealed from is affirmed; taxable costs and disbursements of both parties in this court to be paid out of the estate of Ann E. Scott.

*By the Court.*— Ordered accordingly.

Lyon, J., took no part.

Taylor, J. This action was commenced in the circuit court by the appellant executor for the purpose of obtaining a construction of certain portions of the will of the testatrix, Ann E. Scott. *William B. Neeves* and *George A. Neeves* were made parties to the action as being interested in said will as legatees named therein. In the complaint the executor asked for the construction of certain clauses and provisions in said will, but did not ask for any construction of the third clause in said will, which reads as

follows: "*Third.* Whereas my brother *George A. Neeves* is indebted to me in the sum of ten thousand dollars, money loaned, it is my will that the said indebtedness be canceled, and my brother released from all demands and obligations in consequence of the same. *And whereas he is now indebted individually to the estate of my husband, Thomas B. Scott, deceased, I direct that such individual indebtedness be paid for him out of my estate (so that he may be wholly released from the same) so far as any such indebtedness remains outstanding at my decease.*"

The contention on this appeal is as to the construction which should be given to the words in italics in this paragraph of the will. In other parts of the will the testatrix gave her brother *William B. Neeves* a legacy of $25,000, and to her brother *George A. Neeves* $25,000 in trust for his children.

The brothers of the deceased, *William B.* and *George A.*, appeared in the action and claimed that the court should construe this clause of the will, as well as the parts asked to be construed by the plaintiff in the action; and they offered evidence tending to show, as they claim, that the clause above quoted in italics was intended by the testatrix to refer to a particular claim or debt due to the estate of Thomas B. Scott, her deceased husband, upon a loan of $4,000 made by said Scott in his life-time, as is claimed, to *George A. Neeves,* and $2,000 of which remained unpaid at the time of the death of the testatrix, and that she intended that her estate should pay and cancel this debt, irrespective of the question whether her brother *George* was indebted to the estate of Thomas B. Scott for any part of such $2,000 at the time of her death, or not. The answer of the respondents upon this part of the will is as follows:

"These defendants further allege that, by the individual indebtedness of the defendant *George A. Neeves* to the estate of Thomas B. Scott, deceased, which by the third

paragraph of said will the said testatrix, Ann Eliza Scott, directed to be paid for him, said *George A. Neeves*, out of her estate, so that he might be wholly released from the same, so far as any such indebtedness should remain outstanding at her decease, the said testatrix referred to, and intended to provide for the payment of, certain sums of money loaned to the said *George A. Neeves* by said Thomas B. Scott in his life-time, and for which said Thomas B. Scott received a note or notes made and signed by said *George A. Neeves* in the name of the defendant *William B. Neeves*, his brother, by him, said *George A. Neeves*, as agent; that, at the time of the decease of said Thomas B. Scott, *George A. Neeves* was not indebted to him except for the moneys represented by said notes, and that the said Ann Eliza Scott knew of the loaning of said moneys by said Thomas B. Scott to said *George A. Neeves*, and supposed at the time she executed said will that the evidence of indebtedness for such loans or loan held by said Thomas B. Scott in form and fact showed the said *George A. Neeves* to be the debtor of said Thomas B. Scott therefor, and it was her intention by said paragraph 3 of said will to cause such indebtedness represented by such note or notes to be paid and wholly satisfied out of her estate. These defendants *William B. Neeves* and *George A. Neeves* further allege that the said *Walter A. Scott*, plaintiff, has declared that it is his purpose to enforce the collection of said indebtedness by action upon said notes against said *William B. Neeves*, or otherwise, notwithstanding said provision in said paragraph 3 of said will of Ann E. Scott, deceased; and these defendants fear that he will commence and prosecute such action, unless he should be restrained from so doing by order of this court. Wherefore these defendants pray that it may be adjudged and determined by the court that it was the intention of said Ann E. Scott, in and by said third paragraph of her will, to provide for the payment of said notes,

and of the indebtedness represented thereby, by the plaintiff, as executor of her said will, out of her estate, and that said third paragraph of her said will be, by the judgment of this court, construed as referring and applying to said indebtedness and said notes given therefor, and that the said plaintiff be enjoined by the final judgment in this action, and also during the pendency thereof, from selling, transferring, or in any manner disposing of said notes, or commencing or prosecuting any action thereon against said *William B. Neeves* or said *George A. Neeves*, or otherwise attempting to collect the same."

On the trial in the circuit court the respondents were permitted to introduce evidence, under objection by plaintiff, which, it is claimed, tends to show that the testatrix, by this clause in her will, intended to cancel any debt due to the estate of her deceased husband on account of said $4,000 loan, irrespective of the question as to who owed the debt; and it is insisted that it makes no difference as to the construction of this clause of the will whether *George A.* was at the time of her death, or at any other time, indebted to Thomas B. Scott or to his estate for said sum so loaned, or any part thereof. After hearing the evidence in the case, the learned circuit judge made findings upon this question numbered 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32. The thirty-second finding of fact reads as follows: " The testatrix, Ann E. Scott, meant and intended by the individual indebtedness of her brother *George A. Neeves* to the estate of her husband, Thomas B. Scott, referred to in the third paragraph of her last will and testament, the indebtedness to the estate of her said husband for the balance unpaid of said loan of $4,000, to secure which said promissory notes had been so given by said *George A. Neeves* in the name of *William B. Neeves*, which indebtedness she understood to be, and was accustomed always to describe and speak of as, the individual indebtedness of said *George A. Neeves;* and

she intended to and did, in and by said paragraph, direct that such indebtedness secured by said notes, so far as the same might remain outstanding at her decease, should be paid out of her estate."

And the court found, as a conclusion of law, as follows: "It should be declared and adjudged by the judgment of the court herein that in and by the latter clause of the third paragraph of her will, construed and interpreted according to the true intent and meaning thereof, *first* the said testatrix, Ann E. Scott, directed the payment by her executor, out of her estate, to the estate of her deceased husband, Thomas B. Scott, of the said sum of $2,000, being the unpaid balance of principal of the $4,000 loaned by said Thomas B. Scott to *George A. Neeves* December 11, 1883, and secured by two notes of *William B. Neeves* of that date, made by *George A. Neeves* in his name and as his agent, for $1,000 each, due respectively eight and nine months after date, and bearing interest at the rate of eight per cent. per annum, together with interest upon said $2,000 at the rate of eight per cent. per annum from December 11, 1883, according to the terms of said notes."

The plaintiff duly excepted to the findings of fact and conclusions of law.

It is not contended by the learned counsel for the appellant that the judgment would not be right if there was sufficient evidence in the case to show that *George A. Neeves* was indebted to the estate of Thomas B. Scott, directly or indirectly, for this $2,000, at the time of the death of the testatrix; but it is insisted that the whole evidence in the case shows conclusively that *George A. Neeves* was not at the time of her death, or at any other time, indebted to Scott on account of said loan, and that Scott or his executor has never made any claim on *George A.* on account of such loan. I agree with the contention of the learned counsel for the appellant on this point. My reason for

agreeing with their contention is based on the fact that *George A.* never received any benefit from said loan, so far the evidence in this case tends to show, and that *William B. Neeves* received all such benefit, and his notes were given to and accepted by Scott as the evidence of the indebtedness at the time the loan was made, and further rely upon the written statement of *George A.*, made within eight months of the death of the testatrix, that he owed the estate of Thomas B. Scott nothing.

I do not understand that even the learned counsel for the respondents place great reliance on the fact of the actual indebtedness of *George A. Neeves* to the estate of Thomas B. Scott at the time of the death of the testatrix to sustain the judgment entered in the case. Their principal reliance is upon the claim made that the testatrix intended by her will to direct her estate to pay the amount due the Scott estate on said $4,000 loan at the time of her death without any regard as to who was the debtor. In my opinion, the evidence in this case fails entirely to show any such intent on the part of the testatrix, admitting that it was competent under the law to show by parol evidence that such was her intention. It seems to me very plain that the testatrix, by this statement in her will, intended to benefit her brother *George*, and no one else. It is urged that she supposed that *George* was indebted to her deceased husband upon two notes of $1,000 each, and that it was these notes she intended to have paid out of her estate. This contention, it appears to me, is not probable, nor is it sustained by the evidence. There is evidence enough to show that she knew of the existence of these notes, and there is also an abundance of evidence that she knew that these notes were not signed by her brother *George*, but were signed by her brother *William B.* Now, it is almost too clear for doubt that, if the testatrix had intended to provide for the payment of these notes without regard to the fact whether her

brother *George* was liable for their payment, she would, most naturally, have so stated in her will, and have directed their payment; but, if she intended that they should be paid out of her estate only in case *George* was liable for their payment, she would have directed just as she did in her will. The language of the will, to my mind, excludes the idea that she intended to pay these two notes in any event, whether *George* was liable for their payment or not. Had the evidence shown that the testatrix did not know that *William B.* had given his notes for the $2,000, there would be some reason, perhaps, for saying that she intended to pay this debt in any event; but, when she knew of the liability of her brother *William B.* to pay this debt, and still provides only for the payment of the debt of *George*, it seems to me she excludes the idea that that particular debt shall be paid whether *George* be liable to pay it or not.

It is urged that she supposed *George* was liable to pay this debt, and so it ought to be paid out of her estate. The fact that she supposed *George* liable for the debt can make no difference. Suppose *George* had given his notes for this debt, but, before his sister made her will, he had some arrangement between himself and some stranger by which, for a valid consideration, he had been released from the debt and such stranger had become liable to pay the same to the estate of her husband. Can it be possible that such stranger could have insisted that the debt should be discharged out of her estate, under the language of this will? Who will be benefited by the payment of this debt out of the estate of the testatrix? Certainly no one else than *William B.;* and, when the debt of *William B.* is discharged by the estate of his sister, he will be under no legal or moral obligation to pay the amount to *George;* and so a provision in her will clearly intended to benefit her brother *George* is by the judgment of the court made to

benefit *William B.*, without one word in her will or any intention shown in the evidence that she intended to benefit her brother *William.*

The only reason that could be urged with any plausibility that the testatrix intended that this $2,000 should be paid irrespective of the question as to who was the debtor, must rest on the idea that she supposed that the money which was loaned went into the mill business, and so benefited *George*, and whatever relieved the mill business would benefit him. But the evidence of *George* and *William B.* both rejects this theory of the case. *George* claims no interest in the mill business except to the extent of $25, and *William B.* in no way recognizes his interest in that business beyond his ownership of one share of the stock, of the par value of $25. Why, then, should the mill-owners be relieved from the payment of the $2,000 which they have received and used in their business, by a clause in this will which is clearly intended to benefit *George*, and *George* only? If this $2,000 be paid out of the estate of the testatrix, so far as the evidence in this case shows, no one will be benefited except the owners of the stock of the mill company, some of whom are entire strangers to the testatrix and in no way the objects of her bounty. If, after this debt of the mill company was paid out of her estate, there would be a legal claim on the part of *George* to demand the money of the mill company, the case would have a different aspect, and it might be claimed that the intention of the testatrix would be accomplished substantially as she intended. If it could be shown from the evidence in this case that the payment of the $2,000 out of the estate of the testatrix would inure to the benefit, in any way, of *George A. Neeves*, I should not feel that the intention of the testatrix had been defeated, although in that event it would be taking the $2,000 out of the estate of testatrix,

and giving it as an absolute legacy to *George*, and not simply the canceling of a debt due from *George* to the estate of Scott.

It is said that the testatrix might recognize *George* as the debtor to the estate of Scott for the $2,000, whether there was any legal liability on his part or not; but then, to carry out her intention to benefit *George* to the extent of such indebtedness, the court ought to declare the Scott estate a trustee of the $2,000 when collected of *William B.* for the benefit of *George*, and the estate directed to pay *George* the $2,000 when collected. Such a decree would carry out her intent to benefit *George*, and not the mill company, which can alone be benefited under the judgment entered in this case.

The evidence in the case shows that if, even at any time, *George* was indebted to the estate of Scott for this loan, such indebtedness was for a valuable consideration assumed by his brother *William B.* or by the mill company. The consideration for such assumption of the debt was the receipt by the mill company from *George* of the whole amount of the money loaned, and the giving of the note of one of the principal stock-owners for the payment of such loan, which note was accepted by Scott in full satisfaction of such debt by *George*. Suppose *George* had in fact given his own note to Scott for this $2,000, and this fact had been known to the testatrix, but before her death, and without her knowledge, *George* had paid the $2,000 note to Scott by giving Scott the note of his brother *William*, *William* having received from *George* a sufficient consideration for his note for $2,000. Is it possible that *William* could have received the benefit of this provision in the will of the testatrix? And yet this is substantially what the evidence in the case shows. *George* owes nothing to Scott, because he has in fact received nothing from him. *William* does owe Scott the $2,000, and has received a full consideration for

his promise to pay the debt. Now, if his debt is paid out of the estate of the testatrix, he, and he alone, is the beneficiary under the will, instead of *George;* and, contrary to the express terms of the will declaring the provision for the benefit of *George,* the entire benefit goes to *William B.,* with no liability over to *George* after his debt is satisfied and discharged. The fact that the testatrix supposed *George A.* owed this debt is the strongest evidence that she did not intend that her estate should pay it unless he did in fact owe the debt. If she had intended this debt should be paid irrespective of who owed the debt, it is to me very certain she would not have used the language she did use in her will.

It seems to me so clear that the judgment of the circuit court is in conflict with the intention of the testatrix expressed in her will, that I am constrained to dissent from the decision of this court sustaining such judgment.

A motion for a rehearing was denied September 23, 1890.