TrippE, Judge.
1. The defendant surrendered lot number forty-five and the contest was over lot number forty-four. The will gave the house and lot on which he resided at the time of its execution, to his wife for life, with the remainder to defendants in error, the *483 plaintiffs in the action of ejectment. The defendant below objected to the admission of any parol evidence to show that the house and lot on which testator resided were words intended by him to include or to convey more than lot number forty-five. The plaintiffs claimed that testator intended to give both lots — - his whole place; that he bought lot forty-four with the purpose of making it a part of his homestead; that he treated it and considered it as such, using it as a flower and vegetable garden, ornamental and useful to his home, and declared his intention of still further making it an ornament, by erecting a fountain on it, etc. Was all this competent testimony? In this particular case, I consider the great test to be, whetíier the testator used the word “lot” with reference to the application of it to the artificial divisions of the city of Augusta, as distinguished on the map, or by the city survey, into lots by numbers and sizes; or did he use it as designating the place on which he lived, as defined by his deeds or title, and his inclosure. Mr. Greenleaf says: “If the language of the instrument is applicable to several persons— to several parcels of land — to several species of goods — to several monuments or boundaries — to several writings, or the terms be vague and general — in all these, and the like cases, v parol evidence is admissible of any extrinsic circumstances ^tending to show what person or persons, or what things were intended by the party, or to ascertain his meaning in any other respect:” 1 Greenleaf’s Evidence, section 288. This Court, in Billingslea vs. Moore, 14 Georgia, 374, says, “The general rule is that parol testimony is inadmissible to explain a will, except for the purpose of proving the circumstances surrounding the testator; that is to say, his situation in his relation to persons and things about him,” and in 20 Georgia, 689: “Parol evidence is admissible for the purpose of applying a description to its subjects,” etc. A Court and jury, in the effort to discover the intention of a testator, may, as it were, put themselves in his place, and thus ascertain how the terms of the instrument affect the property or subject matter: 15 Pick., 400; 1 N. & Mc., 534. Upon the question of the admissibility of. parol evidence to explain ambiguities, there is much confusion, and, also, contradiction in the authorities. When most of them were written or pronounced, a distinction was drawn between a patent and a latent ambiguity, the latter being explainable and the former not. And yet in numberless decisions the distinction was so refined or disregarded as to almost make the line undistinguishable, or to set aside the rule. By our statutory provisions the rule is totally abolished.
But to revert to the test which was stated above. Has the word “lot,” as used in this will, such a fixed, specific meaning, to be ascertained or controlled by maps, charts or surveys, that it cannot be permitted to be explained to mean anything but a certain number, to-wit: city lot, known in the survey as number forty-five? It is often used in common discourse by one referring to his home, as meaning the place or premises on which *484 he lives, without reference to where the surveyor’s chain was run, except as it may have marked the outside boundaries or limits of what constitutes those premises. If one buys two city lots, with one inclosure around all, pulls down the dividing fence, uses both as parts of one homestead, considers the one last purchased as protecting his home against too close invasion, by its being liable to be built on, makes it a part of *his yard and gardens, the farthest part of its front not being, probably, in this case, more than sixty or seventy feet from his house, we do not think it would be doing violence to any rule of law to allow such facts, and all others tending to show that, in a devise of the house and lot on which such owner lived, it was intended by him to give all that constituted his house to the object of his bounty.
2. The portion of Mrs. Haley’s interrogatories objected to by defendant was imprpperly admitted in evidence. There was evidently a portion of her answer stricken out by the Court. What that was, we do not know. It was certainly a part of the sayings of Mrs. McElrath, and it was offered against her title as admissions, for instance. If part of what she said was admitted, all should have been admitted. But if this were not so, in its present form, it'leaves a blank which opens the matter to conjecture, and a damaging conjecture, against defendant. Eor, naturally, one would suppose it was a direction from her attorney that she did not have full title, and that the proposition to “do this,” was to give up one right to make good another claim that was not good or valid, and thus an impression was, in all probability, made on the mind of the jury that defendant’s counsel had advised against the validity of his client’s claim. Further, if Mrs. McElrath (then Roath) made this statement as an offer of compromise, it was not admissible. ¿Section 3736 of the Code says: “Admissions or propositions, made with a view to a compromise, are not proper evidence.” This enlarges the common law rule, which did not exclude the admission of distinct facts. When testimony has illegally gone to the jury which might, and probably did, injure the party objecting, it is a ground for a dew trial.
Judgment reversed and a new trial granted.