SARAH L. BRADLEY

*v.*

LEO H. REES *et al.*

*Filed at Mt. Vernon March 26, 1885.*

1. DESCRIPTION—*of land—in a will—whether sufficiently certain.* A devise in a will of "the south-west quarter of the north half of section 14, town 8, range 2, west," is not void for uncertainty in the description. It is the same as the south half of the west half of the north half of the section; and if the section is a mile square, the description embraces eighty acres off the south side of the north-west quarter of the section.

2. WILL—*of a devise purporting to pass more than the testator owns— extent of devisee's rights.* The fact that a testator did not own all of a tract of land devised by him by a good description, will not justify the court in holding the devise void. The devisee, in such case, will take so much of the land described as the testator did own.

3. SAME—*description of devisees—"the four boys," when there were seven sons.* At the time of making his will a testator had seven sons, four of whom were minors, living with him, the other three being men, married, and having families of their own; and his will, after devising a certain part of his land to his infant daughter, contained this clause: "The remaining lands owned by me to be divided between the four boys," without any other designation: *Held,* that the words, "the four boys," meant the four minor sons, who were at the time living with the testator as a part of his family.

4. PAROL EVIDENCE—*to explain a latent ambiguity in a will—and whether an ambiguity is latent or patent.* Where a testator devised to his daughter "the south-west quarter of the north half of section 14, town 8, range 2, west, the remaining lands owned by me to be divided between the four boys," it was *held,* that there was no ambiguity on the face of the will, the inference therefrom being that he had but four sons; but on proof that the testator had seven sons, an ambiguity was made apparent, and, being a latent one, was explainable by parol evidence.

5. So where a testator, after a specific devise of land to his daughter, added, immediately after, these words: "The remaining lands owned by me to be equally divided between the four boys," and the proof showed that he had at the time seven sons, four of whom were minors, residing with him, and the other three being men, and living in their own homes, apart from the father, it was *held,* that parol proof not only of the previous facts known to the testator, and of present circumstances, under which he made his will, but also his declarations made at the time of making the will, as well as before and after, might be resorted to, to remove the ambiguity, if any, and to fix the objects of his bounty.

6. SAME—*to change a devise—mistake as to quantity of land.* Where a will devises land which, by the words used, embraces eighty acres in a larger tract, proof by parol that the testator directed the scrivener to draw the will so as to give only forty acres, is inadmissible. A mistake in drafting a will by the draftsman can not be shown and corrected upon parol evidence in such a case.*

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. DANIEL M. BROWNING, Judge, presiding.

Reuben R. Rees died testate, in Jackson county, Illinois, on December 7, 1880. At his death he left him surviving a widow, Sarah L. Rees, who was named in his will as executrix, and who has since married, and is now named Sarah L. Bradley. The testator, at his death, left him surviving twelve children. Six of them were by a former wife,—that is to say, Mrs. Mary E. Striger, Leo H. Rees, Mrs. Ellen Kilmer, and Ephraim L. Rees, who are the complainants in the original bill in this suit, and Mrs. Paralee C. Beasley and Mrs. Harriet B. Boucher, who are named as defendants in that bill. The remaining six children were born of a second marriage, and were the children of the widow, Sarah L. The testator also left him surviving five grand-children, being children of a married daughter by his first wife, and who died in the lifetime of the testator. These twelve surviving children, and the five grand-children mentioned, constituted the only heirs at law of the testator. All the six surviving children by the first wife, and the eldest son by the second wife, had passed from minority, and were married, before the death of the testator. They had all left the parental roof, and each had a family of his or her own. The remaining five children were minors, and lived at the testator's home, and, with their mother, constituted his family or household at the time of his death. Four of these minors were sons. The youngest of these sons was two years old, and the eldest was about

*As to the correction of mistakes in wills, see *Worrell* v. *Patten,* 69 Ill. 254.

eighteen years of age. The minor daughter was named Dora, and was about seven years of age.

At his death Reuben R. Rees left a will, made on November 26, 1880, and duly attested. On December 21, 1880, this will was duly proved before the county court of Jackson county, and, by order of that court, was on that day duly admitted to probate as the last will and testament of Reuben R. Rees, deceased, and letters testamentary were duly issued to said Sarah L. Rees, as executrix, and she at once gave bond and qualified as such, and entered upon her duties. The will thus probated was in the words following:

"In the name of God, amen. On this the (26th) twenty-sixth day of November, A. D. 1880, I, Reuben R. Rees, being of sound mind and memory, but mindful of decaying nature, do therefore publish this my last will and testament, in the words and figures following, to-wit:

"*First*—My will is, that my funeral expenses and all my just debts be fully paid.

"*Second*—I give and bequeath to my much beloved wife, Sarah L. Rees, all my personal estate, of whatsoever kind and nature, except the articles hereinafter mentioned.

"*Third*—I give and bequeath to my son Albert R. Rees, one chestnut-sorrel horse, and also one span of black mules, to be sold, and the money applied to his education.

"*Fourth*—I give and bequeath to my son James E. Rees, one three-year-old bay filley.

"*Fifth*—To my daughter Dora L. Rees I will and bequeath the south-west quarter of the north-half of section 14, town 8, range 2, west,—the remaining lands owned by me to be divided between the four boys.

"I hereby constitute my wife, Sarah L. Rees, my executrix for me, and to execute the above will.

"In testimony whereof, I hereunto set my hand and seal, the day and year above written.

REUBEN R. REES. [Seal.]"

On February 7, 1881, this suit was begun in the circuit court of that county, by Leo H. Rees, Ephraim L. Rees, Mary E. Striger and Ellen Kilmer, as complainants, making defendants to their bill the widow, Sarah L. Rees, and all the heirs other than complainants. They charged in their bill that at the time of the making of the will the testator was not of sound and disposing mind, and that he was induced by undue influence of his wife, Sarah L., to make the will, and that the fifth clause of the will was void for imperfection in the description of the land given to Dora L. Rees, and for uncertainty in the description of the donees of "the remaining lands" owned by the testator. The bill further set out that Sarah L. Rees, the widow of the testator, had renounced the provisions of the will made in her behalf, and elected to take her dower and statutory allowances as widow, and that such renunciation was duly filed in the county court on January 10, 1881. The prayer of the bill was, that the will be set aside, and that complainants should each be decreed to be entitled to one-thirteenth part of the lands belonging to the testator at the time of his death, and that each of the other children of said Reuben R. Rees, deceased, should be held entitled to one-thirteenth part of said lands, and that the five grand-children mentioned above should be held to be entitled to one-thirteenth of these lands,—each of said grand-children to one-fifth of one-thirteenth, or one sixty-fifth, of said lands,—all subject to the dower of the widow. The prayer of the bill also sought to have the letters testamentary revoked and held for naught; and that the order admitting said will to probate be set aside; and that the county court should be directed to grant letters of administration; and that all claiming under the will be enjoined from so doing; and that complainants and defendants be decreed to be tenants in common of all such lands; and that the widow's dower be assigned, and the residue of the lands be divided and partitioned according to the respective rights of each of the parties.

The defendants were all brought into court by due process, and answered, and the widow and the younger five children filed a cross-bill, asking that the will be sustained, and denying the allegations of fact on which it was sought to invalidate the same. Issues were formed under the original bill and cross-bill. These issues, by agreement, were submitted to the court for trial, a jury being waived, and upon final hearing the same were found for the original complainants, and a decree entered dismissing the cross-bill and granting the relief sought in the original bill. Defendants in the original bill bring the cause here on writ of error.

Mr. A. D. DUFF, and Mr. GEORGE W. SMITH, for the plaintiff in error.

Mr. GEORGE W. ANDREWS, for the defendants in error.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

The proofs entirely fail to sustain the allegations of a want of disposing capacity in the testator, and of undue influence in bringing about the making of the will. In fact, these positions in the bill are not pressed, here, by counsel for defendants in error. The sole questions for our consideration arise upon the fifth clause of the will. These are its words: "To my daughter Dora L. Rees I will and bequeath the south-west quarter of the north half of section 14, town 8, range 2, west,—the remaining lands owned by me to be divided between the four boys." It is insisted in the bill, and in argument, that the description of the land here given to Dora L. Rees "is not such as could be located and determined by section lines and legal boundaries." We see no foundation for or force in the objection. The south-west quarter of the north half of a given section of land is certainly very definite. It is the same as the south half of the west half of the north half of the section,—in other words, it is the south half of the

north-west quarter of the section; and if the section be an exact mile square, the description embraces eighty acres of land off the south side of the north-west quarter of the section. In argument it is said this must be erroneous, because the testator was "not the owner of *all*" of the south half of the north-west quarter of this section. If this be so, Dora takes only so much thereof as the testator did own. *Kurtz* v. *Hibner*, 55 Ill. 514, and *Bishop* v. *Morgan*, 82 id. 351, determine this question.

Counsel for other plaintiffs in error say that there is a mistake in this description, and insist that this error ought to have been corrected so as to give Dora only forty acres, and that so located as to embrace very little of the land here described. This claim is said to be supported by parol proof that the testator, at the making of the will, distinctly directed the scrivener to describe the forty acres named, and that by the blunder of the scrivener the description in the will does not designate the land designated by the testator in his directions to the scrivener. A will, duly signed and attested, as is required by law, can not, in a case like the present, be reformed and such mistake corrected upon parol proof contradicting or changing that which is unequivocal in the words of the will. We must, in such case, deal with it as we find it.

It is also insisted, and this most strenuously, that the description of the donees of "the remaining lands" is too indefinite, and, in fact, void for uncertainty. It is said it is entirely uncertain as to whom reference is had by the use of the words, "the four boys." It is said the testator had then living seven sons, and it is therefore said there is no lawful means of ascertaining which of the seven sons was meant by the words, "the four boys." When it is shown that at the time of making the will three of those sons were *men*, and that each of them was then a married man and the head of a family of his own, with whom he resided, away from the parental roof, and that the other four sons were at that time

minors, living at home with their father, the testator, and constituting a part of his household, it seems exceedingly plain that by the term, "the four boys," used in the connection in which these words were, the testator meant his four minor sons, who were living with him as a part of his household.

It is said this is a patent ambiguity, and it is only latent ambiguities which can be explained by parol proof. We do not think so. Take the will upon its face, and the inference would naturally be that the testator had but four sons, and there is, therefore, on the face of the will, no ambiguity. It is only from proof *aliunde* there were seven sons, that any ambiguity is made apparent. In such case, the circumstances under which the words were used may be proven, to enable us to determine what meaning is to be given to the words, as used. In addition to the facts above referred to, it is made apparent from the instructions given by the testator to the scrivener, and from the repeated declarations of the testator, both before and after the making of the will, as well as by proof of the gifts which he had made to each of his adult children upon their marriage, that by the words, "the four boys," the testator meant his four sons who were then minors, and living with him as a part of his family.

The whole subject of the admissibility of parol evidence in fixing the object or the subject of a devise or bequest, and of the limitations upon the admissibility of such evidence, is fully discussed, and the authorities collected, in 1 Jarman on Wills, chapter 13, with notes and references to American decisions. We do not deem it necessary to enter, here, in detail, upon that discussion, but content ourselves with saying that the subject of the gift to Dora can not lawfully be modified by parol proof, because the description in the will is certain and definite. No equivocation (as it is called in the books) is found in the words of the will in relation to the property described. The clear provisions of the will can not be changed

by parol proof. On the other hand, the proof that the testator had seven sons, (unless we limit the term "boys" to males who are minors,) creates what is called an equivocation, and the authorities show that in such case parol proof,—not only of previous facts which were known to the testator, and of present circumstances in the midst of which he made his will, but his declarations made at the time of making the will, as well as before and after the making of the will,—may be resorted to, to remove the equivocation and fix the objects of his bounty.

The decree in this case is therefore reversed, and the cause remanded, with directions to dismiss the original bill for want of equity.

*Decree reversed.*