JAMES T. ACKERMAN

*v.*

CORNELIUS P. CROUTER et al.

[Submitted November 22d, 1904. Decided January 6th, 1905.]

1. A devise of "the farm which I own at Wortendyke, and known as the David D. A. Wortendyke farm," applied to three tracts of land acquired by David D. A. Wortendyke and used by him together as a farm, and afterward acquired by testator and used by him as a farm.

2. Proof that the testator usually designated the farm as the "Wortendyke farm," or as the "David D. A. Wortendyke farm," was competent and admissible as to testator's intent.

3. The erection of a dwelling-house upon a portion of the farm not separated from the remainder by fences or designated boundaries, and the letting of such house, with the land on which it was erected and some adjoining land to a tenant, did not sever such house and land from the farm so as to render the devise inapplicable thereto.

---

On bill for construction of the will of Peter Ackerman and relief.

The following portions of the will of said deceased are involved:

"*Fifth.* I give and devise unto Lizzie P. Voorhis and Minnie Hopper, daughters of John A. Voorhis, Katie Hopper, wife of Demarest Hopper, and Jemima Hopper, wife of John Hopper, the farm I own at Wortendyke, and known as the David D. A. Wortendyke farm, to them, their heirs and assigns forever, to be equally divided between them, share and share alike, but in case I shall have sold and disposed of said farm before my decease, then I give and bequeath unto said Lizzie P. Voorhis, Minnie Hopper, Katie Hopper and Jemima Hopper, in lieu thereof, each the sum of twenty-five hundred dollars."

"*Eighteenth.* I authorize, empower and direct my executors hereinafter named, or the survivor of them, to sell and dispose of any and all of my real estate not devised by this will at such time or times as they shall deem for the best interest of my estate, either at public or private sale, and give good and sufficient deeds to the purchasers thereof."

"*Twentieth.* All the rest, residue and remainder of my estate not specifically disposed of by this my will, I give and bequeath unto James Turner Ackerman, David D. Ackerman, Mabel Harper, Annie M. Ackerman and Edwin Ackerman equally, share and share alike, to them, their heirs and assigns forever, except as to Edwin Ackerman, whose share of my residuary estate I order and direct my executors to invest and keep invested and pay the income arising therefrom half yearly to said Edwin Ackerman during his natural life, and upon the death of said Edwin Ackerman I give and bequeath his share of said residue so set apart to his heirs, to them, their heirs and assigns forever."

*Mr. David D. Ackerman,* solicitor for some of the defendants, and also one of the parties defendant.

*Mr. Cornelius Doremus,* for the executors and devisees of Peter Ackerman, deceased.

MAGIE, CHANCELLOR.

James T. Ackerman, the complainant, alleging himself to be a resident of New York, filed this bill, which he has signed as a party, no solicitor of this state appearing.

His bill is for relief, involving the construction of the will of Peter Ackerman. He is one of the residuary legatees under the clause of the will set forth in the prefatory note. He makes parties to his bill all the other residuary beneficiaries, the executors of Peter Ackerman and the four persons named in the fifth clause of said will, also set forth above.

The bill seeks to make a case for relief upon these charges. Complainant asserts that Peter Ackerman died seized of lands in Bergen county, possession of which has been taken by the four devisees named in the fifth clause of said will, under the claim that all the said lands were thereby devised to them. Complainant claims that, upon a true construction of the clause, only a part of said lands passed to those devisees, and that the remainder of the lands fell within the power of the executors to sell, shown in the eighteenth clause of the will. He contends that that clause not only empowers, but directs, the executors to make sale of all the lands of decedent not specifically devised. He further claims that he, or those interested with him in the residuum of the estate, have demanded that the

executors should perform their duty of selling the disputed lands, which the executors have neglected or refused to do.

The prayer of the bill is for a decree requiring the executors to make sale of the lands in question if they do not pass by the devise contained in the fifth clause. This involves equitable relief, and therefore brings the case presented within the jurisdiction of this court respecting the construction of wills. *Hoagland* v. *Cooper,* 65 *N. J. Eq.* (*20 Dick.*) *407.*

The question thus presented is doubtless within the jurisdiction of this court, although it involves not so much the construction of any obscure passage of decedent's will, but rather the application of the language to the facts. It is in this sense that jurisdiction has been frequently exercised in this state. *Benham* v. *Hendrickson,* 32 *N. J. Eq.* (*5 Stew.*) *441.* It should be exercised in such cases whenever such construction is necessary to relief, which can only be given in equity. It will not be exercised when the question is a purely legal one. *Torrey* v. *Torrey,* 55 *N. J. Eq.* (*10 Dick.*) *410; Hoagland* v. *Cooper, ubi supra.* If, therefore, complainant makes out a case, by his bill, under which this court can require the executors to perform a duty in the performance of which complainant is interested, jurisdiction ought to be entertained.

The defendants made no objection to the bill of complainant, either by demurrer or plea. All those made defendants as interested in the residuary clause of the will filed answers admitting the charge of the bill and supporting the complainant as to the relief sought except one, who disclaims any interest.

The executors have filed an answer, substantially submitting to any proper order or direction of the court.

The four devisees under the fifth clause have joined in an answer denying the charges contained in the bill, and contesting the construction of the clause asserted by complainant, or the application which complainant seeks to attribute to it.

Replications having been filed, proofs were taken before an examiner of this court and the cause has been thus brought to hearing.

The facts disclosed are substantially these: Peter Ackerman, at his death, was seized of lands in the county of Bergen, at a

place called Wortendyke. He had acquired title thereto by a deed from the sheriff of Bergen county, made by force of a *fieri facias* issued out of this court, upon a decree for the foreclosure of a mortgage or mortgages upon the said lands. This title was acquired on January 16th, 1886, which was the date of the deed made by the sheriff, and decedent continued to hold all of the lands thereby conveyed up to the time of his death, except some small tracts which he conveyed out of the same, but which were not in question in this case. The sheriff's deed conveyed the lots in three tracts. The description of the three tracts was taken from the mortgage upon which the decree was made. That mortgage was made by David D. A. Wortendyke and his wife to one Maria Ackerman. Of these three tracts the first is a tract or farm conveyed to David D. A. Wortendyke, in 1859, and described as containing fifty acres and thirty hundredths of an acre. The second is described as containing seven acres and twenty-five hundredths of an acre, more or less, and as the property devised to David D. A. Wortendyke by Abraham Wortendyke. It is recited that this tract was declared in said will to be known as the Lewis Masker lot. The third tract is described as being thirteen lots, each fifty feet front, and of a depth of two hundred and two and sixty-one hundredths feet, and as described by the numbers on a map of property of C. A. Wortendyke, filed in the Bergen county clerk's office, and further described as bounded by avenues. It is conceded and appears by proof that the second tract adjoins the first, and the third tract lies on the opposite side of a public road, facing the first tract. It is charged and proved that David D. A. Wortendyke acquired title to the second lot by' devise from Abraham Wortendyke, whose will was probated on August 19th, 1857; that he acquired title to the first tract by deed of John B. Wortendyke and wife, recorded July 25th, 1859, and that he became the owner of the third tract by a deed not otherwise described than as being made to him on or about August 12th, 1863.

The complainant's claim, disclosed by his bill, is that the devise contained in the fifth clause of decedent's will, which is in this language, viz., "the farm I own at Wortendyke, known as the David D. A. Wortendyke farm," is to be confined, in its

application to the first tract described in the Ackerman mortgage and the sheriff's deed, as being the farm conveyed to David D. A. Wortendyke by John B. Wortendyke. This is the first disputed point.

On the part of defendants, it is contended that the second and third tracts, though acquired by David D. A. Wortendyke from different sources than the first tract, were, after his acquisition of title, joined with and, as it were, annexed to the fifty-acre farm, so that the whole was usually denominated the David D. A. Wortendyke farm, and that it was that aggregation of land which the testator had in mind and expressed by the devise of the "farm owned by me and known as the David D. A. Wortendyke farm."

The evidence, in my judgment, sustains the defendants' contention. It makes clear that after David D. A. Wortendyke had the title to the three tracts, which were contiguous, he used them all together, as one farm. The seven-acre tract and the thirteen lots were from time to time cultivated and made use of by him, and he lived in a house yet standing on the fifty-acre tract. The evidence justifies the conclusion that after Peter Ackerman bought the three tracts at the sheriff's sale he went into possession of all of them, and continued in the combined use of all of them as one farm. It is true that at times the seven-acre tract and the thirteen lots were not under cultivation, but they did not lose their character as part of the farm by the fact that Peter Ackerman, who lived elsewhere, did not continuously cultivate them. He did, from time to time, take from them that sort of produce which they did furnish, viz., the hay, made from the grass, which he from time to time cut therefrom.

It is further proved that the whole of the tracts were called and recognized by those living in the vicinity as the Wortendyke farm. Although there is some evidence that that phrase was restricted to the fifty-acre tract, it is by no means persuasive, and is confronted by much evidence to the contrary.

Evidence was put in tending to show that the testator habitually spoke of this property as the Wortendyke farm. This evidence was objected to, and it is contended upon this hearing that it was improperly admitted and ought not to be consid-

ered. I am unable to yield to this contention. We are entitled to put ourselves in the place of decedent at the time he executed his will. The names by which he called his children or other beneficiaries under his will, the names by which he called the subjects of his testamentary dispositions, the court is entitled to have to enable it to perceive what was in the mind of the testator, and what was his intent in his devise. If, to use one of the old illustrations, the testator devised a field called "White Acre," the fact that a field in his ownership had acquired that title, and that testator had applied that title to it, would be proper and important evidence.

Looking at the whole evidence, I do not think it admits of a doubt that after David D. A. Wortendyke acquired the title to these three tracts they were all used by him together and properly acquired the name of the Wortendyke farm, and that after Peter Ackerman acquired them he continued their use, so as to justify the use of the same title to express his intent that all of the three tracts which remained yet in his ownership (he had sold some parts) should pass to the devisees under the fifth clause, unless the further contention of the complainant and those interested with him is sustained.

The further contention is that some time in the year 1895 the decedent separated and enclosed a tract of land out of the first tract of fifty acres and built thereon a dwelling-house, and afterwards rented the separated lot and the dwelling-house thereon to a tenant, who remained his tenant until his death. Complainant and the residuary legatees contend that by the separation of this lot from the rest of the fifty acres, and by the use of the dwelling for a tenant, to which it was put by Peter Ackerman, the separated lot was excluded thereby from the description of the fifth clause, viz., the farm known as the David D. A. Wortendyke farm. It is argued that it ceased to be farm land; that although it continued in the ownership of Peter Ackerman, it was no longer a part of the farm he owned.

In my judgment, this is hypercritical. The evidence of any definite separation of the lot on which the dwelling was erected, from the rest of the farm, is very vague and uncertain. No written lease was made. The oral agreement between the tenant

and the testator is testified to by the tenant. No one else was present at the time the bargain was made. But it clearly appears, from the tenant's evidence, that there was no definite pointing out of the boundaries of a separate lot. No new fence was erected. Some old stone fences which had been the dividing lines of the farm fields were indicated, and one line is claimed not marked out by any fence or post or stake, but by a very uncertain reference to distance. The impression the evidence of this tenant makes upon me is that Peter Ackerman, living at a distance from this farm, and finding farming operations not productive of income, built upon a portion of the farm a house for renting. He did not, by any severance visible upon the ground, indicate an intent to change the character of his ownership. The dwelling-house was built upon a part of his farm which he owned at Wortendyke. It was a part of the farm properly designated as the David D. A. Wortendyke farm, and the contention that by the erection of the house he withdrew the property on which the house was erected from the rest of the farm, without its being definitely designated by some boundaries, it seems to me, is destitute of force.

It results that the complainant has failed to support his bill by sufficient evidence to justify a decree. The bill must therefore be dismissed, with costs to the four defendants whose answer contests the complainant's claim.