# National Jewish Hospital for Consumptives *v.* Coleman.

*Bill to Construe Will.*

(Decided November 7, 1914. Rehearing denied. December 17, 1914. 67· South. 699.)

1. *Wills; Beneficiaries; Uncertainty; Evidence to Aid.*—Where the name of a beneficiary in a will making a gift to charity is applicable in a general way to several different charities, but precisely to none, the latent ambiguity may be explained, and parol evidence is admissible to determine the charity named or intended.

2. *Same.*—Where a testamentary gift to a charity is ambiguous because applicable to several different charities, and precisely to none, the religious and social affiliations of the testator and his acquaintance with, relations to, interest in, and transactions with a particular charity, or the lack thereof, may be shown in evidence.

3. *Same.*—Where a provision in a will applied equally to two or more persons and objects, declarations of the testator made at the time of the execution of the will, or about the time of the execution thereof, are admissible to identify the beneficiary intended.

4. *Charities; Beneficiaries; Certainty.*—Charitable gifts are not invalid because the trustee or donee is erroneously or uncertainly designated, where it can be made clear what is intended either from the context of the instrument of the gift, or by parol evidence of the surrounding circumstances, and where a corporation is indicated by an erroneous name, such mistake would not void the gift where it is possible to identify the corporation intended.

5. *Same; Gifts; Ambiguity.*—Where it appeared that there were two institutions of a certain character for the relief of consumptives located at Denver, and testator made a gift to the "Jewish Hospital for Consumptives at Denver," which was supported chiefly by Jews of the reformed faith, while the other institution was supported and controlled very largely by Jews of the orthodox faith, and testator belonged to the orthodox faith, but there was nothing to show that a sectarian feeling dominated him in his charity, and it appeared that he was well acquainted with both institutions, it must be held that the gift was to the National Jewish Hospital for Consumptives, as designated in the will.

6. *Same.*—Where a testator also made a gift to the Jewish Hospital at Jerusalem, and it appeared that testator was a Russian,—Polish Jew, and had lived in Jerusalem, and while there had been a member of a congregation composed of Polish Jews; that at the time of his residence there there were two Jewish Hospitals, the Bicur Cholim, and the Rothschild, the congregation to which he belonged supporting the former hospital, and the latter hospital being supported by the Rothschild family who had never received nor solicited private contributions therefor; that testator had personal knowledge and acquaintance with the Bicur Cholim, and upon one occasion had been a patient therein, and had never been interested in other Jewish hospitals in Jerusalem established after he left there, and had, during his lifetime, made several donations to the Bicur Cholim hospital, and had referred to it as the Jewish hospital at Jerusalem, it must be held that the gift was to the Bicur Cholim Hospital.

APPEAL from Calhoun Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Bill by Thomas W. Coleman, Jr., as executor of L. H. Kaplan, deceased, against the National Jewish Hospital for Consumptives, and others, seeking for the proper construction of the will, and to determine the beneficiaries named therein. From a decree declaring devices and legacies void for uncertainty, certain of the respondents appeal. Reversed and rendered.

BLACKWELL & AGEE, WILLETT & WILLETT, and HANAW & PILLANS, for appellant.

R. C. BRICKELL, Attorney General, W. P. ACKER, and NIEL P. STERNE, for appellee.

SOMERVILLE, J.—The bill is filed by the executors of the will of L. H. Kaplan, deceased, to secure a construction of certain provisions therein. The testator, a resident of Anniston for many years, executed his will on March 9th, 1910, while in an infirmary in Atlanta, where he died three days later. The will gives a part of his estate "to the Jewish Hospital for Consumptives at Denver, Colorado;" and a part "to the Jewish Hospital at Jerusalem." There is nothing else in the will which serves to further identify the beneficiaries thus described by the testator. The difficulty of identification arises from the fact that there is neither at Denver nor at Jerusalem any institution which formally bears a name identical with the designations used in the will; and from the further fact that at or near Denver there are and then were two Jewish hospitals for consumptives, one incorporated as the "National Jewish Hospital for Consumptives," located in Denver, and the other incorporated as the "Jewish Consumptives Relief Society," located in Edgewater, a suburb immediately adjacent to Denver, and with its business office in Denver, and in Jerusalem there are and then were four Jewish hospitals called, respectively, the Bicur (or Bikkur) Cholim Hospital, the Rothschild Hospital, the Misgob Ladoch Hospital, and the Sharre Zadek Hospital. All these institutions were made parties respondent to the bill, but the only ones claiming as beneficiaries under the will are the "National" Hospital of Denver, and the "Bicur Cholim," of Jerusalem.

A great mass of testimony has been taken and introduced with a view to proving or disproving that these claimants are the beneficiaries intended and described

by the testator in the will. The chancellor held, upon a consideration of this evidence, that the beneficiaries intended in the several provisions quoted could not be determined with reasonable certainty; that the devises and legacies were therefore void; and that they would pass to the Kaplan Hospital, to be established at Anniston, as the residuary legatee under the will.

(1) The rule is well settled that: "Charitable gifts are not invalid because the trustee or donee is erroneously or uncertainly designated, when it can be made clear who is intended from the context of the instrument of gift, or by parol evidence as to the surrounding circumstances."—6 Cyc. 936, and cases cited.

"It is an elementary principle that where a corporation is indicated in a will by an erroneous name, such, a mistake will not avoid the gift if it be possible by means of the name used, or by extrinsic evidence, to identify the corporation intended as beneficiary with sufficient certainty."—Page on Willis, § 539.

See, also, Judge Freeman's note, 50 Am. St. Rep. 287.

(2) Where the name of the beneficiary, as expressed in the will, is applicable in a general way to several different charities, but precisely to none of them, the latent ambiguity may be explained, and parol evidence is admissible to determine which of the charities is intended.—*Hinckley v. Thatcher*, 139 Mass. 477, 1 N. E. 840, 52 Am. Rep. 719; *Bristol v. Ontario Orphan Asylum*, 60 Conn. 472, 22 Atl. 848; *Appeal of Washington, etc., University*, 111 Pa. 572, 3 Atl. 664; *Webster v. Morris*, 66 Wis. 366, 28 N. W. 353, 57 Am. Rep. 278; *Chappell v. Miss'y Society*, 3 Ind. App. 356, 29 N. E. 924, 50 Am. St. Rep. 276.

(3) In the note by Mr. Browne to *Chambers v. Watson*, 60 Iowa, 339, 14 N. W. 336, 46 Am. Rep. 77, it is said: "A corporation may be designated by its corpor-

ate name, by the name by which it is usually or popularly called and known, by a name by which it was known and called by the testator, or by any name or description by which it can be distinguished from every other corporation; and when any but the corporate name is used, the circumstances to enable the court to apply the name or description to a particular corporation and identify it as the body intended, and to distinguish it from all others and bring it within the terms of the will, may in all cases be proved by parol. —*St. Luke's Home v. Association,* 52 N. Y. 191, 11 Am. Rep. 697; *Holmes v. Mead,* 52 N. Y. 332; *Gardner v. Heyer,* 2 Paige [N. Y.] 11."

For this purpose it is clear that the religious and social affiliations of the testator and also his acquaintance with, relations to, interest in, and transactions with, a particular body, or the lack thereof, may be inquired into.—*Hinckley v. Thatcher* 139 Mass. 477, 1 N. E. 840, 52 Am. Rep. 719; *Gilmer v. Stone,* 120 U. S. 586, 7 Sup. Ct. 689, 30 L. Ed. 734; *Matter of Kilvert's Trust,* L. R. A., 7 Ch. App. 170, 1 Eng. Rep. 499; *Chappell v. Missionary Society,* 3 Ind. 156, 39 N. E. 924, 50 Am. St. Rep. 276.

(4) And, although there is some lack of harmony in the decisions, the rule is well settled that: "In cases of equivocation, as where the will or a provision thereof applies equally as well to two or more objects or persons, evidence of statements or declarations made by the testator at the time of the execution or about the time of the execution of the will is admissible for the purpose of identifying the person, or property, he intended."—40 Cyc. 1435, and cases cited; *Vandiver v. Vandiver,* 115 Ala. 328, 22 South. 154, 2 Prob. Rep. Ann. 355; *Bradley v. Rees,* 113 Ill. 327, 55 Am. Rep. 422.

(5) In regard to the Denver gift, we think that the testator's use of a name or description for the donee which is identical with the name of the claimant corporation except for the omission of the word "National" is sufficient to show, prima facie, that it is the beneficiary intended; this in view of the fact that the testator was evidently well acquainted with both the National, etc., Hospital and the Jewish, etc., Society, and must have known the corporate name of each from its literature and letter heads received by him, as well as from other sources. It is certain that the testator intended this devise for one of these two Jewish institutions at Denver; and it cannot be reasonably supposed that man of Mr. Kaplan's intelligence and culture, chossing between two similar charities, equally well known to him by name and otherwise, and to both of which he had occasionally made small gifts in his lifetime, would have designated the "Jewish Consumptive's Relief Society" as the "Jewish Hospital for Consumptives." And we think the conclusion is reasonable, if not inevitable, that the testator rather intended that institution which he was approximately describing by its actual corporate name. Nor is this conclusion materially affected by the consideration that the "Relief Society" was supported and controlled very largely by Jews of the orthodox faith of the testator, while the "National Jewish Hospital" was supported and controlled chiefly by Jews of the reformed faith. There is nothing in the evidence to show that Mr. Kaplan was dominated in his charities by narrow sectarian feeling. On the contrary he seems not to have discriminated, as is evidenced by his generous provision for a general and non-sectarian hospital at Anniston. And its broader character, greater capacity for service and more extended field of usefulness, may well have induced the

testator to give his posthumous support to the "Hospital" rather than the "Society."

It may be remarked that where the corporate names of two similar charities are as radically dissimilar as these are, there would be no occasion in ordinary parlance for using their full corporate names when referring to them; and it is perfectly natural that the word "National," as a part of this claimant's name, should have fallen into disuse for other than formal occasions and purposes, as in fact seems to have been the case.

On the whole, we conclude that the undoubted duty of courts to give full effect to all testamentary provisions consistently with their express terms and with the rules of law requires us to hold in this case that the testator intended this gift for the "National Jewish Hospital for Consumptives" at Denver, and that this claimant is entitled thereto.

(6) In regard to the Jerusalem gift, we can entertain no reasonable doubt as to the identity of the beneficiary intended.

The facts leading to our conclusion may be briefly outlined as follows: (1) The testator was a Russian Polish Jew, and lived in Jerusalem from 1872 to 1878. (2) While in Jerusalem he was a member of the Lomser (or Lomze) Congregation, composed of Polish Jews from Lomser, Poland. (3) During that time there were only two Jewish hospitals in Jerusalem, the Bicur Cholim and the Rothschild, and the support and patronage of the Lomser Congregation went to the Bicur Cholim. (4) The testator had personal knowledge of and acquaintance with the Bicur Cholim, and was on one occasion a patient therein. (5) Among the hospitals of Jerusalem, the Bicur Cholim is most particularly an object of interest and support among the Russian

[National Jewish Hospital for Consumptives v. Coleman.]

Polish Jews of America, who ordinarily designate it as the Jewish Hospital at Jerusalem. (6) The Rothschild Hospital is supported by the Rothschild family, and has never solicited or received private contributions. (7) It does not appear that the testator has ever been in any way interested in or concerning the Misgob Ladoch or the Sharre Zadek Hospitals, which were established after he left Jerusalem, the one by Sephardic (or Spanish) Jews, and the other by the German Jews of Frankfort-on-the-Main; and it is a matter of pure conjecture whether he ever even knew of their existence. (8) He kept in his recollection, and perhaps in his affection also, the Bicur Cholim, made several small donations to it, discussed it in conversation with an Atlanta friend, referring to it as *the* Jewish Hospital at Jerusalem; and, if the witness Housdorff is to be believed, the testator had this hospital much in his mind during the last days of his life, and wished to do something for it. (9) In the preparation of his will, and to identify the Jerusalem hospital intended as his beneficiary, the testator directed his attorney and scrivener to get the name from Housdorff; he being an agent of the Bicur Cholim in America, to whom the testator had previously given a contribution therefor, and with whom he had just been discussing that hospital.

We have not overlooked the reasons and arguments presented by opposing counsel in derogation of our several conclusions of fact. On the contrary, we have given due weight and consideration to all of them, but do not think them sufficient to overcome or to substantially weaken our main conclusion.

We entertain no reasonable doubt but that Bicur Cholim is the Jewish hospital at Jerusalem intended by the testator as the beneficiary of this bequest, and we so hold.

It results that the decree of the chancellor is in error as to the validity of these charitable bequests, and the identity of the donees thereof.

That decree will be reversed, and a decree will be here rendered in accordance with the findings above set forth.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.