(101 So. 670)

ACHELIS v. MUSGROVE et al. (6 Div. 42.)

(Supreme Court of Alabama. Oct. 23, 1924.)

1. **Wills ⬤⇒441—Court will assume as nearly as possible testator's position in determining his intent.**

In ascertaining testator's intent, court will place itself as nearly as possible in testator's position, considering surrounding circumstances, conditions of estate, members of family, and social relations with them.

2. **Wills ⬤⇒452—Courts favor heirs and heirship; principle applicable only where devise in doubt.**

Heirs and heirships are favored by courts, though such rule is applicable only where fact of devise or gift is doubtful, or rests on implication alone.

3. **Descent and distribution ⬤⇒47(2) — Gift of $1 evinces intent to exclude legatee from sharing in estate.**

A gift of $1 evinces an unmistakable intent of testator to exclude legatee from sharing in estate.

4. **Wills ⬤⇒449—Construction avoiding partial intestacy will be adopted if possible.**

If possible, construction of will which avoids partial intestacy will be adopted.

5. **Wills ⬤⇒439—Rule that intent of testator governs controls all other rules of construction.**

All other rules for construction of wills are subordinate to the one that intent of testator must be ascertained and given effect.

6. **Wills ⬤⇒490—Devise held to present latent ambiguity in explanation of which parol evidence was proper.**

Devise of "my home place, including my dwelling and the land lying contiguous thereto which I own," *held* to present a latent ambiguity, affecting which parol evidence showing circumstances and illustrating the sense in which the testator used it was proper.

7. **Wills ⬤⇒489(4)—Except where latent ambiguity exists, parol evidence of testator's declarations contradictory of will are inadmissible.**

As general rule, except where latent ambiguity exists in application of terms of will to persons or property, parol evidence of testator's declarations are inadmissible to show intent not deducible from terms of will or in contradiction of it.

8. **Wills ⬤⇒561(2)—Land included within devise determined.**

Devise of "my home place, including my dwelling and the land lying contiguous thereto which I own," followed by general description, *held* to include lands other than small tract inclosed by fence about actual dwelling, though cut off by railroads and unopened streets.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Bill in equity by Louise Achelis against C. R. Musgrove and others. From a decree dismissing the bill, complainant appeals. Affirmed.

The bill of complaint is filed for the sale of certain lands alleged to be jointly owned by the complainant, Louise (Musgrove) Achelis, and the respondents. The respondents Cole and Moore claim to own the entire estate in the lands in suit to the exclusion of complainant. They claim as purchasers from the respondent C. R. Musgrove, an unmarried daughter of Mrs. E. C. Musgrove, who was the unquestioned owner of the land until her death in 1917. C. R. Musgrove claimed title as devisee of the lands under the will of her said mother. Complainant's contention is that the devise to C. R. Musgrove did not include these lands, and that as to them the said testatrix, her grandmother, died intestate, passing the title by descent to her heirs at law, all of whom are made parties to the bill. Complainant claims an undivided one-fourth interest as the only child and heir of her deceased father, J. C. Musgrove, one of Mrs. E. C. Musgrove's four children.

The provisions of the will, so far as they are pertinent to the issue involved, or useful in its proper construction, are as follows:

"2nd. I will and bequeath to my granddaughter, Louise Musgrove the daughter of my deceased son, J. C. Musgrove, the sum of one dollar.

"3rd. I will and bequeath to my son, L. B. Musgrove all the live stock, vehicles and agricultural implements of which I may die possessed. All my interest in any land which I own either individually or as joint owner which lies between Town creek and Tan Yard creek in the city of Jasper, Ala. All that portion or lot or lots of land owned by me lying north of Nineteenth street and West of Alabama Avenue on Town creek in Jasper, Alabama, also one oil portrait of himself, also fifteen hundred dollars in cash.

"4th. I will and bequeath to my daughter, Mrs. M. C. Long two thousand dollars in cash. * * * I also bequeath to her one half dozen silver spoons which spoons have my name engraved upon them.

"5th. I will and bequeath to my daughter, C. R. Musgrove, *my home place, including my dwelling and the land lying contiguous thereto which I own*, and that portion of lot or lots owned by me lying east of Alabama avenue and north of 19th street in the city of Jasper, Alabama. All my household and kitchen furniture and three thousand dollars in cash. The silver tea service I will shall remain in the possession of my daughter C. R. Musgrove and shall become hers, unless my son L. B. Musgrove should marry, in which event said silver tea service shall be delivered to him as a bridal present from me." (Italics supplied.)

The evidence shows that Mrs. Elizabeth C. Musgrove and her husband, before the Civil War, acquired and occupied a tract of about 220 acres of land, which included all the lands mentioned in her will or included in this litigation. During the war her husband died, and shortly thereafter Mrs. Musgrove became the owner of the entire place—the homestead proper and the farm and wood lands adjoining—and from that time to her death in 1917 she lived on the place, cultivating and using the surrounding lands.

In 1865 Jasper was a small country village near the Musgrove homestead, and in the course of time the town grew around one side of the Musgrove property, its main street or roadway from the east cutting off a small part of this property on the northern side. In plattings of the city of Jasper, made later on, a considerable portion of the Musgrove property was platted as lots, blocks, and streets of the city, but the only practical application of this was to the roadway through the northern side, which became East 19th street, an open and much used highway.

In the 80's several railroads were built to and beyond Jasper, and the Northern Alabama and "Frisco" roads passed through the Musgrove property just to the south of the homestead, and the rights of way were fenced off on both sides. Thereafter the tract between the railroads and East 19th street was under a common fence, surrounding the homestead proper, and the remainder was separated as above stated; but Mrs. Musgrove continued to use the entire property as formerly.

The evidence shows that at the time the will was made Mrs. Musgrove, the testatrix, had three living children: L. B. Musgrove, a son, who was very wealthy; Mrs. M. C. (Zue M.) Long, a married daughter, whose husband was also well-to-do; and C. R. Musgrove, an unmarried daughter, the chief beneficiary under the will, who owned no property whatever. Another son, J. C. Musgrove, was then deceased, leaving a widow (remarried to a wealthy man) and a daughter Louise, who is the complainant in this proceeding. Between the testatrix and the widow and child of J. C. Musgrove there had long existed an estrangement, and friendly relations were absent.

A. F. Fite, of Jasper, for appellant.

The law presumes against disinheritance of heirs. Wolffe v. Loeb, 98 Ala. 426, 13 So. 744. Presumption against partial intestacy arises only where an intention to pass the whole estate is expressed. 40 Cyc. 1388b, 1410. Parol proof of testator's intention is not admissible. Simmons v. Simmons, 73 Ala. 235; Alexander v. Bates, 127 Ala. 328, 28 So. 415. The witness who writes the will cannot be permitted to testify what his intention was in framing it. Sharpe v. Hall, 86 Ala. 110, 5 So. 497, 11 Am. St. Rep. 28. There is no ambiguity in the will. Cham-

bers v. Ringstaff, 69 Ala. 141; Black v. Pratt C. & C. Co., 85 Ala. 510, 5 So. 89.

Bankhead & Bankhead, of Jasper, for appellees.

The testator's intent must prevail, if not inconsistent with the law or public policy. Castleberry v. Stringer, 176 Ala. 250, 57 So. 849; Summers v. Summers, 198 Ala. 33, 73 So. 401, L. R. A. 1917C, 597; 28 R. C. L. 211. For applicable rules in ascertaining intention, see 28 R. C. L. 215; Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann. Cas. 1915C, 1226; Bell v. Hogan, 1 Stew. 536; Edwards v. Bibb, 43 Ala. 666; Himmel v. Himmel, 294 Ill. 557, 128 N. E. 641, 13 A. L. R. 611; Wooley v. Hays, 285 Mo. 566, 226 S. W. 842, 16 A. L. R. 1; Barr v. Weaver, 132 Ala. 212, 31 So. 488; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; Myrick v. Williamson, 190 Ala. 485, 67 So. 273; Cook v. Williams, 202 Ala. 637, 81 So. 579; 40 Cyc. 1392; Ann. Cas. 1915B, 11, note; O'Connell v. O'Connell, 196 Ala. 224, 72 So. 81. Parol evidence is admissible, where there is a latent ambiguity. 2 C. J. 1314; Summers v. Summers. supra; 28 R. C. L. 270; Ann. Cas. 1915B, 11 note; Lomax v. Lomax, 6 L. R. A. (N. S.) 956 note; Coulam v. Doull, 133 U. S. 216, 10 S. Ct. 253, 33 L. Ed. 596. Intestacy is to be avoided, if possible, in construction of wills. 28 R. C. L. 227; 40 Cyc. 1409.

SOMERVILLE, J. The sole issue in this case is whether the description of the lands devised by the testatrix to C. R. Musgrove was. intended to, and does, include all the lands belonging to the testatrix not otherwise specially devised. Complainant's contention is that the devise of "my home place, including my dwelling and the land lying contiguous thereto which I own," must be restricted in its application to the premises immediately contiguous to the. dwelling house, and inclosed with it under a common fence. The argument, in brief, is that the progress of events has destroyed the former unity of the Musgrove property, and that for some time past it has been divided into a "home place," lying to the north of the railroads, and to the east of Alabama avenue (a platted but unopened street), and a farm lying to the south of the railroads, and a nondescript tract west of Alabama avenue, separated by a fence from the "home place" proper.

Counsel for complainant (appellant here) lays much stress upon the operation and effect of the plattings shown by maps offered in evidence, upon the use of small portions of the property on the west, at various times, for the site of an ice factory, and other purposes dissociated from "home" uses, and upon the fact that the testatrix made one or more deeds to small tracts on the northern side in which she recognized, by the descriptive terms used, the plattings of the Jasper maps, as she did also by descriptions used in the will. In view of these conditions, it is earnestly insisted that the descriptive words in question could not have been intended to apply, or at least cannot be reasonably construed to apply, to those portions of the Musgrove property lying outside of the inclosure surrounding the homestead proper, and that, those outlying portions, not having been otherwise disposed of by the testatrix in the will, as to them she died intestate, and they pass by descent to her heirs at law.

[1] In ascertaining the testator's intent from the language of the will, the court will place itself, as nearly as possible, in the testator's position, by considering the surrounding circumstances, the condition of his estate and of the members of his family, and his social relations with them. Castleberry v. Stringer, 176 Ala. 250, 57 So. 849; 28 R. C. L. 270, 273, § 244.

[2, 3] In the construction of wills, heirs and heirship are favored by the courts, but this principle is applicable only in cases where the fact of a devise or gift is doubtful under the terms of the will, as where it rests upon implication merely. Shackleford v. Washburn, 180 Ala. 168, 60 So. 318, 43 L. R. A. (N. S.) 1195; Wolffe v. Loeb, 98 Ala. 426, 13 So. 744. It is of no value here, where the ambiguity is in the descriptive phrase of a clear devise, especially since every heir. at law is referred to by name, and the property each is to take is specifically stated. And it must be noted that, in making the nominal gift of $1 to the complainant, her granddaughter Louise Musgrove, the testatrix evinced an unmistakable intention to deliberately exclude her from sharing in the estate. McDermott v. Scully, 91 Conn. 45, 98 A. 350, Ann. Cas. 1917E, 407.

[4] On the other hand, it is a well-settled rule that—

"In the construction of doubtful clauses in a will, that interpretation is to be adopted if possible which avoids a partial intestacy, unless it clearly appears that the testator intended to die intestate as to part of his property." 28 R. C. L. 227, § 189, citing numerous cases.

[5, 6] But these, and all other rules of construction, are subordinate to the cardinal rule that the intention of the testator must be ascertained and given effect. They are useful only in aid, not in contravention, of that controlling purpose. Unquestionably, the descriptive language here in question presents a latent ambiguity, which may be removed by appropriate parol evidence showing the circumstances which may illustrate the sense in which the testatrix used it, and thereby give to it a certain meaning and application. Summers v. Summers, 198 Ala.

30, 32, 73 So. 401, L. R. A. 1917C, 597; 28 R. C. L. 270, § 244.

[7] It is a general rule, of course, that parol evidence of a testator's *declarations*, whether made before or after the execution of a will, are not admissible to show an intention not deducible from the terms of the will, or in contradiction or alteration of its plain and unambiguous language. 40 Cyc. 1433, and cases cited in note 28; 28 R. C. L. 280, § 251; Simmons v. Simmons, 73 Ala. 235; Dozier v. Dozier, 201 Ala. 174, 77 So. 700. But it is well settled that in all cases of *latent ambiguity* in the terms of a will, in their application to persons or property—

"Evidence of statements or declarations made by the testator at the time of the execution, or about the time of the execution, of his will is admissible for the purpose of identifying the person or property he intended." 40 Cyc. 1435–36; 2 Am. & Eng. Ency. Law (2d Ed.) 294; Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154, 2 Prob. Rep. Ann. 355; National, etc., Hospital v. Coleman, 191 Ala. 150, 67 So. 699; McElrath v Haley, 48 Ga. 641; Wadsworth v. Ruggles, 6 Pick. (Mass.) 63; Thomson v. Thomson, 115 Mo. 56, 21 S. W. 1085, 1128; Ackerman v. Crouter, 68 N. J. Eq. 49, 59 A. 574; Scott v. Neeves, 77 Wis. 305, 45 N. W. 421; Bradley v. Rees, 113 Ill. 327, 55 Am. Rep. 422; McDermott v. Scully, 91 Conn. 45, 98 A. 350, Ann. Cas. 1917E, 407.

The distinction is that, while such declarations are admissible to explain the meaning of ambiguous terms, it is never admissible to show terms the testator intended to use.

[8] We have examined the evidence in this case with studious care, and have given due consideration to the views and arguments of counsel, which, however, we cannot review in detail here. Our conclusion, unaided by the declarations of the testatrix made to her scrivener, Judge T. L. Sowell, is that the testatrix intended to dispose of all of her property; that she conceived of her "home place" as including all of the tract held, occupied and used by her from the beginning down to her death, and not merely the small area inclosed by a fence around her dwelling house; and that she intended the entire property to pass by this devise to her daughter, C. R. Musgrove.

We attach no importance to the theoretical divisions shown by the city maps, for it is clear that the testatrix never regarded them as affecting the unity of her property, nor do we think that the passage of the railroads south of her residence, and the fencing off of their rights of way, is entitled to be given any material weight, in determining what she meant by her "home place." Those factors worked no real separation of the testatrix's property, as a matter of fact, and certainly not in her own mind.

The phrase following this general description, "including my dwelling and the land lying contiguous thereto which I own," is not to be regarded as limitational or restrictive, but merely as a particular specification of something to be included in the greater tract. " 'Include' * * * has * * * two shades of the same meaning. It may apply where that which is affected is the only thing included," and "it is also used to express the idea that the thing in question constitutes a part only of the contents of some other thing." It is more commonly used in the latter sense. Dumas v. Boulin, McGloin (La.) 274, 277. " 'Including' is not a word of limitation, rather is it a word of enlargement, and in ordinary signification implies that something else has been given beyond the general language which precedes it." In re Geotz, 71 App. Div. 272, 75 N. Y. S. 751. For other authorities in accord, see 4 Words & Phrases (First Series) pp. 3499, 3500.

But, in addition to the considerations stated, we think that the testimony of Judge Sowell, who drew the will, as to his conversation with the testatrix at the time of its making, showing unmistakably her understanding of the meaning of the language used, and her intention by its use to devise all of her lands, including in her "home place"—the land south of the railroad and the graveyard tract—was admissible to show the meaning of the language adopted in the will, and to relieve its application of the latent ambiguity exhibited. The case of Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154, supra, is immediately in point, and is decisive of the question. This evidence leaves no doubt in our minds as to the proper construction of the devise in question, and the decree of the circuit court will be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.