176 So. 817

**MONEY et al. v. MONEY et al.**

4 Div. 962.

Supreme Court of Alabama.

Nov. 11, 1937.

F. W. Fish, of Abbeville, for appellants.

G. D. Halstead, of Headland, for appellees.

KNIGHT, Justice.

Tom Jeff Money departed this life in Henry county, Ala., on August 14, 1934, leaving a last will and testament, and which was admitted to probate and record, in common form, in the probate court of said county on the 21st day of January, 1935. J. A. Money and T. E. Money, nephews of the testator, were appointed by the probate court administrators of the estate, cum testamento annexo.

The administration of the estate was, by proper order, removed from the probate court to the circuit court, in equity. Thereupon, Joe Money and others filed the bill or petition now before the court for interpretation and judicial construction of the will, claiming to be interested in said estate under said will.

The cause proceeded to final decree, the court holding that under the will of said decedent the living children of the two brothers of the decedent, Jim and John E. Money, and one Malcolm Edmondson took the estate in equal parts, share and share alike.

It appears from the bill and evidence offered on the hearing that at the time of the testator's death he had only one brother, John E. Money; that Jim Money, his other brother, was then dead, a circumstance known to the testator.

It also appears from the bill and exhibit thereto, and the testimony, that the will was written by Dr. Vickers, the physician attending the testator during his last illness. The original will is before us, having been sent to this court by the trial court for our inspection and consideration.

The will reads:

"State of Alabama, Henry Co. Abbeville, Ala. Aug. 11th, 1934.

"I hereby being in sound mind, make the following will, and ask that it be carried

out. This will pertains to mortgage of John R. Buxton and wife, Mary.

"First. I will that all my debts be paid as soon as possible.

"Second. I will that the money from said mortgage goes evenly to my brothers children, and that Malcolm Edmondson share evenly with them, after all expenses including burial and doctor bills are paid.

"In few words, I will that Malcolm Edmondson shares just as the Money children, all having the same equal amount after my debts are paid."

The will shows some erasures, unnecessary to be noticed, and is signed by the testator by mark. It was executed three days before his death.

Confessedly, the will was written by a layman, inexperienced in writing such documents.

It is contended by appellants that only the children of John E. Money, the living brother, and the said Malcolm Edmondson were intended by the testator to take under the provisions of the will, while the appellees contend that they, children of Jim Money, the deceased brother, share equally in the distribution of the estate.

It will be noticed that the will reads: "I will that the money from said mortgage goes evenly to my brothers children." There is no apostrophe before or after the letter "s" in brothers.

It is first contended by appellant that there are but two letters following the "h" in brothers, and the word should be read brother and not brothers. An inspection of the original will does not bear out, or sustain, this contention. As we read the will, it is "brothers," not brother. We will, therefore, proceed to construe the will as reading brothers, without apostrophe before the "s," and bearing in mind that at that time the testator had but one living brother, John E. Money.

With reference to the writing and execution of the will, Dr. Vickers, the attending physician, and the one who drew the will, and a subscribing witness thereto, testified:

"Your name is Dr. W. C. Vickers? Ans. Yes sir.

"Did you know Tom Jeff Money? Ans. Yes sir.

"Did you wait on him at any time? Ans. Yes sir.

"Were you at his home on or about August 11th, 1934? Ans. Yes sir.

"On this date of August 11th, 1934, did you at his request write a will for him? Ans. I did.

"Will you state in your own words what happened, what transpired and what you did? Ans. He wanted all the debts paid out of some land up there somewhere and the doctor bill and burial expenses and what was left he wanted it to go to his brothers children.

"Do you remember whether he told any one there to get a paper to give to you when you were writing the will? Ans. I don't remember; he got some paper to write the will.

"Did he dictate it to you? Ans. Practically so.

"Did he say whose brothers children, which brothers? Ans. John Money.

"John Money's children? Ans. Yes sir.
* * *

"After the debts were paid and funeral expenses were paid out of this land what was left was to go to the children of John Money? Ans. Yes sir."

J. R. Buxton, a subcribing witness to the will, testified, in substance, that he was present when the will was written by Dr. Vickers, that he heard the instruction given by the testator with reference to writing the will; that the testator told Malcolm Edmondson to get up some papers "he had there," and give them to Dr. Vickers, saying he wanted the will written just like "that." That Mr. Money told Dr. Vickers how he wanted the property divided, and to whom he wanted it to go. He told him he wanted it to go to Mr. John Money's children and Malcolm Edmondson, and like it was in "that deed." This deed was introduced in evidence and the conveyance in this deed, after the termination of a life estate given to his sister, was to "Malcolm Edmondson and the children of his brother John E. Money, share and share alike."

We recognize the general rule to be that parol evidence of a testator's declarations, whether made before or after the execution of a will, are not admissible to show an intention not deducible from the terms of the will, or in contradiction or alteration of its plain and unambiguous language. Simmons v. Simmons, 73 Ala. 235; Dozier v. Dozier, 201 Ala. 174, 77 So. 700; Achelis v. Musgrove, 212 Ala. 47, 101 So. 670, 672.

18

But in cases where there is latent ambiguity, as pointed out in Achelis v. Musgrove, supra, statements or declarations of the testator "at the time of the execution, or about the time of the execution, of his will [are] admissible for the purpose of identifying the person or property." 2 Am. & Eng.Ency. of Law (2d Ed.), 294; Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154; Alabama Mutual Fire Ins. Co. v. Minchener, 133 Ala. 632, 32 So. 225.

"The distinction is that, while such declarations are admissible to explain the meaning of ambiguous terms, it is never admissible to show terms the testator intended to use."

In the Musgrove Case, supra, this court held that the testimony of the person who drew the will, as to his conversation with the testatrix at the time of its making, showing her understanding of the meaning of the language used, and her intention by its use to devise all her lands, was admissible, to show the meaning of the language adopted in the will, and to relieve it of the latent ambiguity exhibited.

In the Vandiver Case, supra, this court held that the devise in the will of A. F. Vandiver, deceased, of all his "upland" to his wife, Jane C. Vandiver, was not void on its face for uncertainty. The court held that whatever upland the testator owned, or whatever of his land it could be shown he had in mind and intended to dispose of by describing it as "upland," passed to Mrs. Vandiver under the will. There being evidence in the case tending to show that the testator owned no uplands, strictly so called, but that his lands were in part "bottom" lands, and the rest "second bottom or bench" lands, it was held that a case of latent ambiguity was presented in attempting to apply his will to the subject-matter with which he dealt; and that it was competent to cure the ambiguity by showing that the testator regarded second or bench land as upland, and in that sense employed the term "upland." We further held that evidence of the testator's declarations at the time of making his will was properly admitted to show what lands he intended to include by the term "upland."

The rules of testamentary construction are too well understood to need restatement here. Ralls v. Johnson, 200 Ala. 178, 75 So. 926; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Gunter v. Townsend, 202 Ala. 160, 79 So. 644; Jemison v. Brasher, 202 Ala. 578, 81 So. 80; Fowlkes v. Clay, 205 Ala. 523, 88 So. 651; Steele v. Crute, 208 Ala. 2, 93 So. 694; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

As above pointed out, the testator, at the time he executed the will, had but one brother; his brother Jim was then dead. And whether he had in mind the children of his living brother only, or the children of his deceased, as well as those of his living brother, developed a case of latent ambiguity. Especially is this true when there is nothing to show on the face of the instrument whether the word "brothers" was used in the singular number, in the possessive case, with apostrophe omitted before the "s," or was a plural word, in the possessive case, without the apostrophe following the "s." This latent ambiguity so developed authorized a resort to parol evidence, making admissible the declarations of the testator, and his instructions to the scrivener made and given at, or just before, the time the will was written. Vandiver v. Vandiver, 115 Ala. 328, 22 So. 154; Achelis v. Musgrove, 212 Ala. 47, 101 So. 670; 2 Am. & Eng. Ency. of Law, (2d Ed.) page 294.

The testimony offered leaves no room to doubt that the testator declared his desire and intention to give to the children of his brother John E. Money and Malcolm Edmondson the designated property. Dr. Vickers was so instructed to write the will, and it is a reasonable conclusion from the evidence that the testator was under the impression the will as written and executed gave his property to the children of his living brother John E. Money and Malcolm Edmondson, share and share alike. Our construction of the will, in the light of the evidence, is, that subject to the payment of debts, the children of John E. Money and Malcolm Edmondson take the property, share and share alike.

The trial court reached a different conclusion, holding that the living children of the deceased brother, Jim Money, as well as the children of the living brother, shared with the said Malcolm Edmondson in the distribution of the estate. In this there was error.

It follows that the decree of the circuit court will be reversed, and a decree here rendered adjudging that the children of John E. Money, to wit, J. A. Money, T. E. Money, Ellen Rudd, Annie Mae Gilbert, Clara Bell Davis, Ruthie Powers, Eloise

Davis, Donnie Money, and Woodrow Money, along with the said Malcolm Edmondson, take the entire estate, share and share alike, to the exclusion of the children of the deceased brother Jim Money.

Reversed, rendered, and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.