### UNITED STATES v. FIFTEEN DRILLED DIAMONDS.

(District Court, D. Connecticut. February 14, 1904.)

No. 1,398.

1. CUSTOMS DUTIES — FORFEITURE — CLASSIFICATION — DRILLED DIAMONDS — BORT.

On the trial for forfeiture of certain diamonds of an inferior quality, and of the variety commonly called "bort," which had been advanced in condition by being drilled, the disposition of the case turned on whether the articles were free of duty under Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 435, 30 Stat. 192 [U. S. Comp. St. 1901, p. 1676], relating to "diamonds * * * not advanced in condition," etc., "including * * * bort." Held, that the terms of limitation following the provision for diamonds do not relate to the provision for bort, and that the merchandise was accordingly free of duty.

F. H. Parker, U. S. Atty.

O'Neill, O'Neill & O'Neill, for defendant.

PLATT, District Judge. The merchandise in question was imported by mail, and seized in the possession of the Waterbury Wire Die Company, of Waterbury, Conn., to whom the packages were addressed. Said company intervened, claiming the merchandise, and has filed its answer.

The second defense is as follows:

"The defendant, the Waterbury Wire Die Company, is a corporation organized under the laws of Connecticut, and is located in Waterbury, where it carries on the business of manufacturing dies for the purpose of drawing wire.

"(2) In the conduct of its said business the defendant has discovered it to be expedient, in the construction of its dies, to use diamonds with holes drilled therein for reducing and regulating the size of the wire to be drawn.

"(3) The fifteen drilled diamonds described in the information are each and all of them of an inferior quality, commonly called 'bort.' They are so imperfectly crystalized that they are all of them useless as ornamental stones or gems. None of them have, or are capable of having, brilliancy. All of them are nontransparent, and none of them are capable of being made transparent. Every one of them is fit for use only when crushed into diamond dust, or for a miners', a glaziers', or an engravers' tool or instrument, or for other mechanical purpose. They were imported by said company to be used in the construction of wire-die machinery, for reducing and regulating the size of wire to be drawn."

To this the United States attorney, on behalf of the United States, filed the following demurrer:

"The United States demurs to paragraphs 1, 2, and 3 of claimant's second defense to the information in the above-entitled action, because:

"(1) The facts therein set forth are insufficient in the law to warrant a judgment against the United States and in favor of the claimant in said action.

"(2) It is not alleged in said paragraphs that the fifteen drilled diamonds described in the information are 'rough and uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting or other process.'

127 F.—48

"(3) It is admitted in said paragraphs, and in no way denied therein, that the fifteen drilled diamonds described in the information were, at the time they were imported into the United States, advanced in condition or value from their natural state by drilling and other process, as is alleged in the information.

"(4) In no statute of the United States respecting customs duties upon diamonds imported into the United States from foreign countries are any diamonds exempted from the payment of customs duties because of their inferior quality, their imperfect degree of crystallization, their want of brilliancy or transparency, or the uses for which they may be adapted, or the uses to which the importer puts them, except miners', glaziers', and engravers' diamonds, not set; and it is not alleged in said paragraphs that the diamonds described in the information were miners', glaziers', or engravers' diamonds."

This raises a clearly defined issue. The government contends that the merchandise is dutiable under Act July 24, 1897, c. 11, § 1, Schedule N, par. 435, 30 Stat. 192, 2 Supp. Rev. St. p. 690 [U. S. Comp. St. 1901, p. 1676], which reads as follows:

"Diamonds and other precious stones, advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, and not set, ten per centum ad valorem."

The claimant insists that it is exempt from duty under paragraph 545, p. 696, of the free list in the same act [U. S. Comp. St. 1901, p. 1683], which reads:

"Diamonds and other precious stones, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting, or other process, including miners', glaziers', and engravers' diamonds, not set, and diamond dust or bort."

The government arrives at its conclusion by the following method: It omits as inapplicable the words "miners', glaziers', and engravers' diamonds, not set, and diamond dust or," from paragraph 545, and transposes the two words which remain, to wit, "including bort," from the position where the Congress placed them, to the earlier part, so that the paragraph, as revised and emasculated, would read:

"Diamonds, including bort, rough or uncut, and not advanced in condition or value from their natural state by cleaving, splitting, cutting or other process."

Contrasting paragraph 435 with paragraph 545 thus reconstructed, it is argued that the distinction between dutiable and nondutiable diamonds is that the one is advanced in condition or value by some process, while the other is rough or uncut, and not advanced in condition or value by any process. If the merchandise imported had been diamond dust, the demand for duty thereon could have been made with equal emphasis. It would seem that in paragraph 545 diamonds, under certain conditions, are placed upon the free list, and then, fearful lest certain articles which it intended to exempt from duty might by construction be held not to have fallen within the prescribed conditions, the Congress added the words from "process" to the end of the paragraph. Bort is clearly of the genus diamond, but it is also clear that it is of a very inferior grade, and, for a variety of reasons, cannot be substituted for the diamond, which is placed at the head of the group known as "precious stones."

The second definition in the Century Dictionary fits the case in hand.

"(2) An amorphous variety of diamond, brown, gray, or black in color, and known also as 'black diamond' or 'carbonado,' found massive in Brazil, in asso-

ciation with pure diamonds. This is extensively used as the cutting material in diamond drills and stone saws, for which ordinary diamonds are unsuited, from their crumbling and cleaving."

For the reasons briefly suggested, and for others which appear obvious, and therefore do not require expression, I am of the opinion that the merchandise in question comes under both the letter and the spirit of paragraph 545, and is not subject to duty.

The demurrer to the second defense is overruled.