## Proceeds of Sunday Concerts

ARNOLD, Deputy Attorney General, September 11, 1934.—You have asked us to advise you as to the proper construction of the provisions of the Sunday Concerts Act of June 2, 1933, P. L. 1423, which require payment to your department of certain proceeds of Sunday concerts held under authority of that act.

Section 2 of the act provides as follows:

"If, and when, authorized by the Department of Public Instruction of this Commonwealth, public concerts may be rendered and broadcast anywhere within this Commonwealth on Sunday after twelve o'clock noon; and it shall be lawful for the person or persons rendering any such concert to charge an admission fee thereto at a rate which it is estimated will cover the expenses of rendering such concert, including light, heat and compensation to ushers, janitors and musicians: Provided, That the cost of light and heat and compensation to ushers, janitors and musicians shall not exceed an amount computed at the rate charged for light and heat and compensation to ushers, janitors and musicians for week-days: And provided further, That should the amount collected for admission fees to any such concert exceed the actual expenses for light, heat and compensation to ushers, janitors and musicians, the excess shall be paid to the Department of Public Instruction of this Commonwealth to be employed by it for such public music purposes as it may deem proper."

Your particular question is whether the sponsors of a Sunday concert may pay from the proceeds expenses such as costs of printing, telegrams, postage, music sheets, advertisements, and rental of hall, or whether all the proceeds above the amounts paid for light, heat, and compensation to ushers, janitors, and musicians must be paid to your department.

The purpose of the Sunday Concerts Act was to legalize concerts held on Sunday at which admission fees were charged. At the same time, the legislature sought to prevent the conduct of purely commercialized projects engaged in by the sponsors for profit. Hence the restrictions on the amount of admission charges and the requirement for the return of the excess receipts to your department. Keeping this general purpose in view, let us examine the language of section 2 of the act in further detail.

The first statement concerning the amount of admission fees which may be charged is that the amount may be such as is estimated will cover *"the expenses of rendering such concert, including* light, heat and compensation to ushers, janitors and musicians". There can be little doubt that this language authorizes the collection of admission fees sufficient to cover all the reasonable expenses of conducting the concert and is not confined simply to the cost of light, heat, and compensation to ushers, janitors, and musicians. The use of the word "including" in the phrase makes this conclusion clear. That word has several shades of meaning, but in its present use it is not a word of limitation. Similar uses are comparatively common.

In Achelis v. Musgrove et al., 212 Ala. 47, 101 So. 670, 672, the court said:

" ' "Include" . . . has . . . two shades of the same meaning. It may apply where that which is affected is the only thing included,' and 'it is also used to express the idea that the thing in question constitutes a part only of the contents of some other thing.' It is more commonly used in the latter sense. . . . ' "Including" is not a word of limitation, rather it is a word of enlargement, and in ordinary signification implies that something else has been given beyond the general language which precedes it.' "

In Cunningham v. Sizer Steel Corporation, 1 F. (2d) 337 (1934), the court had before it for construction a mortgage which created a lien on all the real estate and fixed property of the mortgagor and also all personal property, expressly including certain specific things mentioned that were located upon the described real estate. It was argued that the enumeration of the specified articles limited the general language which preceded the word "including". The court rejected this contention, saying (p. 338) :

". . . But the word 'including,' in view of the general provision preceding the

specific enumeration of the things mortgaged, is not a term of limitation. On the contrary, it implies an additional inclusion to that evidence by the use of general language. . . ."

In United States v. Fifteen Drilled Diamonds, 127 Fed. 753 (1904), there is also presented an example of the use of the word "including" in the same sense.

Does the subsequent language of section 2 of the Sunday Concerts Act alter the meaning of the phrase just construed and limit the amount of admission fees to the estimated cost of light, heat, and compensation of ushers, janitors, and musicians only? We find no warrant for such a construction. The admission charges may cover all proper costs of the concert.

There can be no doubt that, if it stood alone, the final proviso of section 2 would compel payment to your department of all the proceeds of the Sunday concert which were not needed for the specific items enumerated in that proviso. However, we cannot read this clause independently of its context. We may not overlook the fact that the legislature has expressly authorized the collection of admission fees sufficient to cover expenses in addition to those specified in the proviso. Can we say that the legislature intended to allow the collection of this greater amount simply to require its payment to your department and not to permit it to be used for the very expenses upon the estimates of which the fund was collected? Our answer must be no. The act is not a revenue act and was not designed to levy a tax on the concerts or to augment the State Treasury.

In In re Foster's Petition, 243 Pa. 92, 98 (1914), the Supreme Court said:

". . . Where an adherence to the strict letter would lead to injustice, to absurdity, or to contradictory provisions, the duty devolves upon the court of ascertaining the true meaning: 36 Cyc. 1107. It is fundamental that if, giving to the words of an act that literal or natural meaning, the conclusion reached would be unreasonable or absurd, some other meaning within the reasonable scope of the words may be adopted to avoid that result, if it appears that such other meaning may probably have been the one intended: Rossmiller v. State [114] (Wis.) [169], 91 Am. St. Rep. 910, 913. It is a settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is impossible and incapable of execution. . . ."

In our opinion, the proviso at the end of section 2 of the Sunday Concerts Act must be construed in the light of the principle just stated. We could not attribute to the legislature the unbelievable intention to permit the collection of fees based on general expenses of the concert and then to forbid the use of the fees for any but a very limited part of those expenses and require the balance to be forfeited to the State. Moreover, the purpose of the act to permit and encourage proper Sunday concerts, the expenses of which should be borne by those who enjoy them, would be defeated by any such construction. A concert of any size necessarily involves many expenditures other than those for light, heat, and compensation to ushers, janitors, and musicians. Tickets and programs must be printed, tickets must be sold, and many other small expenses are inevitable. If the admission fees may not be used for these costs, somebody must pay for them out of his own pocket. That was not the purpose of the act. It was designed to allow concerts to be self-sustaining.

Therefore, we advise you that the sponsors of a Sunday concert authorized under the Act of 1933 may charge an admission fee which will cover the estimated expenses of conducting the concert. These expenses need not be confined to payment of light, heat, and compensation to ushers, janitors, and musicians but may include other legitimate costs of the concert. Having collected admis-

sion fees for the concert, the sponsors may apply them to all such expenses and not simply to those enumerated in the last proviso of section 2 of the Act of 1933. Only after such expenses have been paid must the excess be paid to your department.

Just what items of expense may be included and which ones rejected will be a matter for the exercise of sound discretion in each case. In dealing with the question, you should keep in mind the purpose of the act to permit Sunday concerts to be self-sustaining but at the same time to exclude any element of commercialization or promoters' profits.     From C. P. Addams, Harrisburg, Pa.